Randall Don GAITHER, Deceased, By and Through his next friend, next of kin and mother, Darlene CHALFIN, Appellee,

v.

The CITY OF TULSA, a municipal corporation, Appellant.

No. 53867.

Supreme Court of Oklahoma.

May 24, 1983.

Parks, Beard & Williamson by Curtis A. Parks and Michael J. Beard, Tulsa, for appellee.

Waldo F. Bales, City Atty. of Tulsa by David L. Pauling, Asst. City Atty., Tulsa, for appellant; Morris Flynn, Oklahoma City, on brief.

HODGES, Justice.

The novel issue presented is whether the divorced mother of a deceased minor child may maintain a wrongful death action without joining the natural father or personal representative? Other errors urged on appeal are: the trial court's instructions; admission of incompetent testimony relating to the mother's emotional suffering; admission of "staged" photographs; and failure to reduce the verdict by 40% under Oklahoma's comparative negligence rule.

A sudden rain storm created flooded streets and ditches in Tulsa on July 9, 1977. Randall Don Gaither, a five year old boy, was playing in the water flowing through a bar ditch when he fell through a rotten piece of plywood covering an inlet to a drainage conduit and drowned. The parents of the decedent and the City of Tulsa, appellant, were aware of the opening to the drainage system. The mother, Darlene Chalfin, appellee, filed an action to recover for the death of her son, asserting that the City was negligent in failing to properly secure the inlet with a permanent covering. The City responded that decedent's natural father negligently covered the opening with plywood and that the boy's mother was negligent because she let him play in the water without supervision. The City demurred to the mother's petition, alleging a defect of parties because the father was not

a party. Because the mother and decedent's father were divorced at the time of the accident, the trial court overruled the demurrer. The jury found: the plaintiff 40% negligent; the City 60% negligent; and total damages of $262,000.00, which the court awarded to the mother.

## I

The City alleges that the trial court committed reversible error prior to trial by recognizing the mother's right to bring the action without joining the father as party-plaintiff. We do not agree; and find that the mother could maintain the wrongful death action independent of the natural father. The action for the wrongful death of an unmarried, unemancipated minor child is permitted pursuant to 12 O.S.Supp.1975 § 1055.[1] The statute allows the recovery of damages for the wrongful death of a child which were non-existent at common law, and creates and enlarges the substantive rights of the survivors.[2]

The determination of proper parties under § 1055 has not been considered previously by this Court. Title 12 O.S.1971 § 1054[3] provides that an action under 12 O.S.1971 § 1053[4] (wrongful death) may be brought by the personal representative, if one has been appointed; by the widow, if there has been no personal representative appointed; or by the next-of-kin, if there is no widow. Although the subsequent enactment of § 1055 contains no specific reference to § 1054, it seems apparent that it should apply. Because there has been no personal representative appointed or surviving widow in this case, the action must be initiated by the parents[5] or an individual parent as next-of-kin.[6] The question is, if they are divorced, are both required to join in the action?

 In this case, the mother seeks to recover only for those items which inure to her benefit. For the purpose of trial, the amount of money expended in rearing the child and for funeral and burial expenses was stipulated. In addition to pecuniary loss, the mother also has a personal right, independent of all others, to recover for the loss of companionship and love of the child; destruction of the parent-child relationship, and intangible personal injuries which accrue to her alone. Section 1055 permits recovery of damages for the wrongful death of a minor child which were non-existent at common law and non-recoverable under previous wrongful death statutes. The City's argument that the natural father

---

1. It is provided by 12 O.S.Supp.1975 § 1055:
 "In all actions hereinafter brought to recover damages for the death of an unmarried, unemancipated minor child, the damages recoverable shall include medical and burial expense, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in support, maintenance and education of such minor child in such amount as, under all circumstances of the case, may be just."

2. *Thomas v. Cumberland Operating Co.,* 569 P.2d 974, 977 (Okl.1977).

3. It is provided by 12 O.S.1971 § 1054:
 "In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other State or Territory, or when, being a resident of this State, no personal representative is or has been appointed, the action provided in the said section may be

brought by the widow, or where there is no widow, by the next of kin of such deceased."

4. It is provided by 12 O.S.1971 § 1053:
 "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin' to be distributed in the same manner as personal property of the deceased."

5. *Cowan v. Atchison, T. & S.F. Ry. Co.,* 66 Okl. 273, 275, 168 P. 1015, 1016 (1917).

6. *Retherford v. Halliburton Co.,* 572 P.2d 966, 968 (Okl.1978).

must be joined as a party plaintiff so his potential negligence can be considered by the jury is unfounded. There is no requirement that one be a party to the lawsuit before his negligence may be considered by the jury in the negligence calculations.[7] The burden is not on the mother to seek out and bring in other parties who may or may not have standing. The City apparently made no attempt to join the father as party plaintiff, although, under 12 O.S.1971 § 323,[8] it most likely could have done so. There is sound public policy for this position. The whim and desire of a father or other next-of-kin could easily dictate the fate of the plaintiff mother. The father could elect to dismiss the suit or refuse to prosecute it with vigor, thwarting the mother's attempt to recover for the loss and damages personal to her and accruing only to her.[9]

## II

■ The City asserts the trial court committed reversible error by precluding jury consideration of the contributing negligence of the decedent's natural father as a defense to this action. We find that any basis for this complaint was addressed by the instructions given by the court.[10] The record does not reflect any requested instructions or objections to the instructions concerning this contention. If the record fails to disclose that the appellant saved exceptions to questioned instructions or lack thereof, review is limited to the determination of whether the instructions are free from fundamental error.

7. The negligence of tort-feasors who are not parties to the lawsuit, "ghost tortfeasors," should be considered by the jury in order to properly apportion the negligence of the parties. *Paul v. N.L. Industries, Inc.,* 624 P.2d 68, 70 (Okl.1981).

8. It is provided by 12 O.S.1971 § 323:
"All claims which arise out of the transaction or occurrence that is the foundation of the plaintiff's claim and which contain common questions of fact, may be joined in one action, and any person who is liable on such a claim may be joined as a party to the action. The court may order a separate trial of any claim or of any issue in the furtherance of a just and prompt determination of the controversy and to avoid delay or prejudice. Nothing herein permits the joinder of liability insurers or creates any right of contribution or indemnity which has not heretofore existed."

9. *Wilson v. Lund,* 74 Wash.2d 945, 447 P.2d 718, 720 (1968).

10. Jury Instruction No. 17 provides:
"If you find from a preponderance of the evidence that the defendant was negligent and you also find that without the negligence of a third party who concealed the drainage opening through which Randall Don Gaither fell no injury would have been done to the plaintiff, you must return a verdict for the defendant, provided you find that the intervening act of concealing the drainage opening was the sole proximate cause of plaintiff's injuries."
Jury Instruction No. 19 provides:
"You are instructed that the causal connection between an act of negligence and injury is broken by the intervention of a new, independent and efficient cause, which was neither anticipated nor reasonably foreseeable.... In such case the negligence of the original wrongdoer is not actionable because it is only the remote, rather than the proximate, cause of injury.... Thus where a negligent act merely creates a condition making an injury possible, and a subsequent independent act causes the injury, the original act of negligence is not ordinarily the proximate cause thereof.

"However, in order to relieve the one guilty of the first act of negligence of responsibility, the intervening cause must entirely supersede the original negligence. In other words, it must be independent of the original act and adequate of itself to bring about the injurious result ... Consequently where an act of negligence is not superseded by a second cause, but continues to operate, so that the injury is the result of both causes acting in concert, each act may be regarded as the proximate cause thereof.... And where separate and independent acts of negligence combine to produce an injury, each wrongdoer is responsible for the entire result.

"Furthermore, if the intervening cause was foreseen, or might reasonably have been foreseen by the wrongdoer, his negligence may be considered as a proximate cause of the injury and he may be held liable not withstanding the intervening cause. In such case the negligence continues and operates contemporaneously with the anticipated intervening cause and may be regarded as a concurrent cause of the resulting injury.... In such case, of course, it is not necessary that the precise form of the intervening cause should have been anticipated. It is enough if it could have been reasonably expected that a cause would intervene in a way likely to produce an injury similar to that actually suffered."

## III

The City argues that the verdict was actuated by passion, prejudice, mistake, and misapprehension of the jury as a result of the admission of "incompetent testimony relating to plaintiff's emotional suffering and subsequent admission of staged photographs." The mother offered numerous photographs taken nineteen months after ·the accident, and she asserts the exchange of photographic evidence required by a pretrial order fully disclosed every physical and geographical fact in issue and the additional photographs were merely cumulative and could not have resulted in prejudice. We agree. Introduction of photographs which depicted the location of the accident was necessitated by the defenses presented by the City, especially when it denied responsibility for the care and maintenance of the drainage conduit. The City's contention that the drainage ditch was privately constructed justified the admissibility of the photographs in question. Photographs are admissible in evidence when it is proven that they correctly show the objects surrounding the scene of the accident in substantially the same condition as when the accident occurred and as long as they are not used as a "stage setting" for the purpose of reenacting the accident.[11]

## IV

The City contends that the court improperly admitted the testimony of the mother's psychiatrist which related to her emotional suffering; and to permit recovery for mental anguish or emotional disturbance in the absence of physical injury to the mother would cause a severe conflict between statutory provisions which govern wrongful death actions. These actions were unknown at common law, and any right of action surviving the decedent exists because of statutory enactment.[12] Traditionally, the damages were limited to pecuniary benefits specified by statute; and there was no recovery permitted a parent for injury to feelings, mental anguish, loss of society and companionship or destruction of the parent-child relationship.[13] This argument has been nullified by the enactment of the 1979 amendment of § 1053 which permits recovery for grief and loss of consortium and companionship to the surviving spouse, children and parents of the decedent.[14]

In an action by a parent for the wrongful death of a child, destruction of the parent-child relationship is an allowable element of recoverable damage pursuant to 12 O.S.Supp.1975 § 1055. The Legislature recognized that the cost-accounting measurement of damages which balanced the value of the services of the child against the cost of support was archaic in a society which is not structured on child labor, or the family chore milieu of a farming community. Today, the injury sustained by a parent as the result of the death of a child is primarily a disruption in emotional and mental well being.[15] Apparently, Washington and Oklahoma are the only states whose statutes include the phrase "destruction of the parent-child relationship." This

---

**11.** *Montgomery Ward & Co., Inc. v. Curtis,* 199 Okl. 525, 188 P.2d 199, 203 (1948); J. Lawter, "Recovery For Wrongful Death," 34 Okl.L.Rev. 659 (1981).

**12.** *Thomas v. Cumberland Operating Co., note 2, supra.*

**13.** *Lockhart v. Besel,* 71 Wash.2d 112, 426 P.2d 605, 608–09 (1967); See Annot., "Parents Loss Of Child's Society And Companionship, As Element Of Damages For Injury To Child," 69 A.L.R.3d 553 (1976).

**14.** It is provided by 12 O.S.Supp.1979 § 1053 in pertinent part that damages recoverable for wrongful death include:

"The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse.
"The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship."

**15.** *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495, 498–500 (1975); See also _____ "Wrongful Death Of A Minor Child: The Changing Parental Injury," 43 Washington L.Rev. 655–56, 668 (1967).

phrase has not been construed in Oklahoma. The Washington court defined the statutory phrases "loss of love" and "destruction of the parent-child relationship" to include recovery for parental grief, mental pain and suffering under appropriate circumstances.[16]

■ For purposes of proving grief, mental anguish or suffering, destruction of the parent-child relationship and loss of love and companionship, expert psychiatric testimony may often be useful and proper, if not absolutely necessary. This testimony is helpful to: 1) provide a reasonably reliable basis for consideration of an award of damages; 2) prevent the trier of fact from relying on mere speculation and conjecture; and 3) prevent resort to legal assumptions and conclusion which have little or no supporting medical or other reasonably reliable data.[17]

## V

■ The City claims that the instructions were defective because the court failed to include a specific provision stating that the amount of damages would be reduced in proportion to the percentage of the mother's negligence. The jury was given a standard verdict form which stated, "We find the total amount of damages sustained by the plaintiff, disregarding the percentages of contributory negligence of the plaintiff and negligence of the defendant, is the sum of $_____." Instruction 28 recognized the duty of the jury to assess the amount of recovery; and provided that the total amount should be computed disregarding the degree of fault or negligence.[18] The underlying principle of comparative negligence is founded on attaching liability in direct proportion to the fault of each person whose negligence caused the damage.[19] The record reflects neither a motion or request to reduce the judgment, nor an explanation for the trial court's failure to apportion the verdict based on the jury's assessment of 60% negligence to the City and 40% negligence to the mother. The instructions considered as a whole were neither misleading, nor prejudicial; and fairly presented the law applicable to the issues in the pleadings upon which competent evidence had been introduced.[20] A judgment

---

16. *Hinzman v. Palmanteer,* 81 Wash.2d 327, 501 P.2d 1228, 1230 (1972); *Wilson v. Lund,* 80 Wash.2d 91, 491 P.2d 1287, 1290, 1293 (1971). See also E. Hamilton, "Wrongful Death Of Children In Oklahoma": Statutory Expansion Of Recoverable Damages, 11 Tulsa L.J. 98, 101 (1975).

The Legislature has subsequently amended § 1053 to include recovery for grief of the surviving spouse, parents, or children of decedent. Grief is defined as emotional suffering caused by or as if by bereavement. See Webster's Seventh New Collegiate Dictionary; G. & C. Merriam Co., Springfield, Mass. (1967).

Also, Grief is defined as: "a. Suffering; pain; distress, also, a cause of these; a hurt, hardship, wound, or the like; a malady or disease; an injury, wrong, or grievance. 'Be factious for redress of all these griefs.' Shak. b. A document setting forth a grievance. c. An aggrieved or angered state of mind; offense. 2. Mental suffering, esp. such as follows from application, bereavement, remorse, or the like; also, a cause of such suffering; as, his conduct was a *grief* to his parents. The mother was so afflicted at the loss of a fine boy . . . that she died for *grief* of it. 3. A mishap, misadventure; in a stronger sense, disaster; failure; -esp. in to come, or to bring, to grief. 4. Hard wear or usage; abuse; also, difficulty, or difficulties; hard knocks. Local, U.S.

Syn.—Sadness, woe, anguish; trial. See Sorrow.
Ant.—Joy, happiness, delight, gladness; comfort.
 Combinations (in sense 4) are:

grief-bowed grief-exhausted grief-scored
grief-distraught grief-inspired grief-stricken
grief-dulled grief-oppressed grief-worn"

See Webster's New International Dictionary of the English Language, Second Edition, Unabridged. G. & C. Merriam Company, Springfield, Mass. (1952).

17. *Wilson v. Lund, note 16, supra.*

18. Instruction 28 provides:
 "In arriving at the dollar amount, you will not consider the degree of fault or negligence, if any, but indicate on the verdict in the appropriate blank, the total amount that would fairly and reasonably compensate the plaintiff in so far as the same may be computed in money."

19. *Laubach v. Morgan,* 588 P.2d 1071, 1075 (Okl.1978).

20. *Wasson v. Davis,* 283 P.2d 807, 808 (Okl. 1955).

will not be disturbed on appeal because of allegedly erroneous instructions where, considered together, the instructions fairly present the law applicable to the issues raised by the pleadings and the evidence.[21]

■ Although a verdict returned by the jury in proper form cannot be challenged on its face, the court has inherent power to correct a manifestly irregular or defective verdict to conform to the jury's intention, if the intention can be ascertained with certainty.[22] We need not look beyond the jury's verdict to ascertain inconsistent intent. The verdict of $262,000.00 is not the equivalent of 60% of the total prayer ($737,743.44), which would be the case if the jury, in disregard of the instructions, had reduced the total sum by plaintiff's 40% share of fault.

■ It was the statutory duty[23] of the trial judge to apportion the verdict in accordance to the parties' relative degrees of negligence. The jury determined the percentage of liability and the amount of damages, it was the responsibility of the judge to "do the arithmetic."[24] Entry of judgment without regard to the requisite apportionment of damages in compliance with the application of comparative negligence principles was error. The judgment against the City of Tulsa is in all respects affirmed upon the condition that a remittitur in the amount of $104,800.00 is filed in the trial court.

REVERSED IN PART. AFFIRMED ON CONDITION AS STATED, IN PART.

LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur.

SIMMS, V.C.J., concurs in part, dissents in part.

BARNES, C.J., and IRWIN and OPALA, JJ., dissent.

---

**21.** *Smith v. U.S. Gypsum Co.*, 612 P.2d 251, 256, 7 A.L.R. 4th 147 (Okl.1980).

**22.** *Esker v. Kip's Big Boy, Inc.*, 632 P.2d 414, 417 (Okl.1981).

**23.** Title 23 O.S.Supp.1973 § 11 provided in pertinent part:
"... provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the

recovery shall be diminished in proportion to such contributory negligence."
This statute was repealed and replaced by 23 O.S.Supp.1979 § 14:
"Where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such person's contributory negligence."

**24.** *Smith v. Gizzi*, 564 P.2d 1009, 1013 (Okl. 1977).