## Jonette T. Hartnett v. Union Mutual Fire Insurance Co., City of St. Albans, et al.

[569 A.2d 486]

No. 87-033

Present: Peck and Dooley, JJ., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed November 17, 1989

*John P. Maley* and *Geoffrey M. FitzGerald* of *Sylvester & Maley, Inc.*, Burlington, for Plaintiff-Appellee.

*David A. Barra* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendant-Appellant.

**Dooley, J.** Plaintiff, Jonette Hartnett, brought this wrongful death action to recover for the death of her three children in a fire in her home. She sued a number of defendants, including the City of St. Albans, appellant here, alleging that its fire chief had negligently approved a chimney where the fire started. She settled with all defendants except the City and, after a jury trial, obtained a verdict against the City. The City raises two issues on appeal: (1) the trial court erred in allowing recovery for the parents' mental grief and anguish as a result of the death of their children; and (2) the trial court erred in not requiring expert testimony on the issue of whether the parents suffered mental grief and anguish. We affirm.

Vermont's Wrongful Death Act is a remedial statute designed to alleviate the harsh common-law rule that denied recovery for negligently inflicted death. See *Vaillancourt v. Medical Center Hosp. of Vermont, Inc.*, 139 Vt. 138, 141, 425 A.2d 92, 94 (1980). It is based on Lord Campbell's Act and generally awards damages to the decedent's next of kin only for "pecuniary loss." See *Calhoun v. Blakely*, 152 Vt. 113, 116, 564 A.2d 590, 592 (1989); *Allen v. Moore*, 109 Vt. 405, 407, 199 A. 257, 257 (1938). The pecuniary loss rule has been particularly controversial in cases where the decedent is a child because it often allows no recovery at all. See, e.g., Comment, *The Pecuniary Loss Rule as an Inappropriate Measure of Damages in*

*Child Death Cases*, 18 Ind. L. Rev. 731 (1985). In modern times, the loss to parents and other next of kin from the death of a child is more likely to be nonpecuniary—for example, mental anguish and loss of companionship—than pecuniary.

Recognizing the limited usefulness of the Wrongful Death Act in child victim cases, the Vermont Legislature amended the statute in 1976 to broaden the losses for which compensation may be obtained. The statute now reads:

> (b) The court or jury before whom the issue is tried may give such damages as are just, with reference to the pecuniary injuries resulting from such death . . . . In the case where the decedent is a minor child, the term pecuniary injuries shall also include the loss of love and companionship of the child and for destruction of the parent-child relationship in such amount as under all the circumstances of the case, may be just.

14 V.S.A. § 1492(b). We have not had the occasion to interpret this language. The dispute between the parties in this case is whether § 1492(b) allows recovery for grief and mental anguish. Plaintiff argues that its legislative history, if not its wording, shows that it was intended to allow such recovery. Defendant argues that it cannot be interpreted to allow recovery for grief.

The statutory language of the 1976 amendment to § 1492(b) was taken from a Washington statute which, in all respects material to this case, is identical to § 1492(b) as amended. See Wash. Rev. Code Ann. § 4.24.010 (relevant language adopted in 1967).[1] One other state has adopted this statute: Oklahoma. See 12 Okla. Stat. Ann. § 1055 (adopted in 1975).

■ Where Vermont adopts a statute copied from another state, the presumption is that the Legislature also adopted the construction given the statute by the courts of the other state. See 2A N. Singer, Sutherland Statutory Construction § 52.02,

---

[1] The Washington statute applies not only to wrongful death of the child but also to injury to the child, not resulting in death. Thus, the statute covers "injury to" as well as destruction of the parent-child relationship. This language was dropped from the Vermont version because 14 V.S.A. § 1492(b) is solely a wrongful death statute. This difference is not material to the issue before the Court in this case.

at 522 (4th ed. 1984); *State v. Francis*, 151 Vt. 296, 307, 561 A.2d 392, 399 (1989). We can find nothing to rebut the presumption in this case. Accordingly, in construing § 1492(b) we look to the construction of the Washington statute by the Washington courts.

The Washington Supreme Court has, on a number of occasions, interpreted its statute to allow recovery for grief and mental anguish. The leading case is *Wilson v. Lund*, 80 Wash. 2d 91, 96, 491 P.2d 1287, 1290 (1971), where the Washington court construed the terms "loss of love" and "destruction of the parent-child relationship" to include recovery for parental grief, mental anguish and suffering. The court's conclusion is based in part on the history of the legislation in Washington and on the court's determination that the only possible meaning of the words included mental anguish. On the latter point, the court stated:

> [R]ecovery for mental anguish is the *only category of damages* which we can conceive could have been intended by the legislature in enacting the disputed statutory phrase. Simply and directly stated, *no legally recognizable category or element of damages remains—other than the category describable as compensation for mental anguish.*

*Id.* at 99, 491 P.2d at 1292. While the court noted that it was required to follow legislative intent even if "shocked" by the result, it did find its construction of the statute consistent with the trends to provide compensation for intangible-emotional injuries. *Id.* at 100, 491 P.2d at 1292. The Washington courts have reaffirmed the holding of *Wilson v. Lund* on numerous occasions. See, e.g., *United Pacific Ins. Co. v. Edgecomb*, 41 Wash. App. 741, 744, 706 P.2d 233, 234 (1985); *Harbeson v. Parke-Davis, Inc.*, 98 Wash. 2d 460, 475, 656 P.2d 483, 493 (1983); *Hinzman v. Palmanteer*, 81 Wash. 2d 327, 329, 501 P.2d 1228, 1230 (1972); see also *Shaw v. United States*, 741 F.2d 1202, 1209–10 (9th Cir. 1984) (Federal Tort Claims Act action based on Washington law).

The only other state with a statute with identical language is Oklahoma. In *Gaither v. City of Tulsa*, 664 P.2d 1026, 1030–31 (Okla. 1983), the Oklahoma Supreme Court interpreted its stat-

ute as allowing recovery for parental grief, mental pain and suffering in appropriate circumstances. See also Note, *Recovery for Wrongful Death*, 34 Okla. L. Rev. 659, 669 (1981) (the only guidance to construe the child-wrongful death act "is provided by decisions of the Supreme Court of Washington"); Comment, *Wrongful Death of Children in Oklahoma: Statutory Expansion of Recoverable Damages*, 11 Tulsa L.J. 98, 103 (1975) (Washington statute as construed by the Washington Supreme Court is guide for Oklahoma interpretation).

We believe that the interpretation of the damages language by the Supreme Court of Washington is reasonable and adopt it as the proper interpretation of the 1976 amendment to 14 V.S.A. § 1492(b). We share the Washington court's conclusion that the term "destruction of the parent-child relationship" must include grief, mental anguish and suffering or it is largely a meaningless concept. We are aware, of course, that distinguished commentators were urging an expansion of permissible damages to cover grief and anguish at the same time as the Vermont Legislature acted. See Speiser & Malawer, *An American Tragedy: Damages for Mental Anguish of Bereaved Relatives in Wrongful Death Actions*, 51 Tul. L. Rev. 1 (1976).

The City has provided us with an all-state summary of wrongful death statutes, as interpreted by the applicable state courts, to show that states like Vermont which generally base wrongful death recovery on "pecuniary loss" rarely find that grief and anguish is compensable. We fail to see the relevance of this analysis to this case. Our Legislature was no doubt aware of the long line of cases from this Court limiting recovery in child death cases and chose to act to expand the compensable elements of a damage award. They chose as a model the statute of a state whose highest court had consistently interpreted it as allowing recovery for grief. That interpretation is reasonable. The actions of other states with different statutes are irrelevant to the proper construction of our statute.

The City raises one other argument in support of its position that the decision to allow the jury to award damages for grief and mental anguish was error. That argument is that the trial court allowed double recovery by allowing the jury to award

damages for destruction of the parent-child relationship and for grief and mental anguish. The argument is directed at the charge and the special interrogatory the court submitted to the jury. The charge stated:

> If you reach the issue of damages, you must consider two distinct elements. One is in a sense positive. The other is negative. Damages in a case such as this are difficult to assess. But you must do your best to reach a result that will be just to both parties.
>
> In the sense of what I've called positive damages, you must consider and assess the value of the loss of certain positive attributes of these three children to these parents. These damages are specified as the loss of love and companionship of the three children, and any loss of positive attributes of the parent-child relationship. You should not attempt to make any judgment as to the value of a life, but only the losses I've just stated.
>
> Second, you must consider what I term negative damages. This is mental anguish and grief. It may be considered the parents' emotional response to the deaths of these children. I know it may be difficult to fully separate these positive and negative issues, but the law makes this distinction and we must attempt to apply it here.

The interrogatories for the jury had a special section dealing with damages if the jury found liability. That section directed the jury to specify a damage amount for "loss of love and companionship, and for destruction of the parent-child relationship," and then a separate amount for "mental anguish and grief." It concluded with a direction that the jury add the two amounts to calculate "total damages."

Defendant argues that the interrogatories necessarily allowed duplicate recovery because the first amount covered all items in the statute and the second item again covered grief and mental anguish. Before reaching this argument, we must determine whether it was properly preserved. See, e.g., *State v. Bushey*, 148 Vt. 197, 200, 531 A.2d 902, 904 (1987).

Following the charge to the jury, defendant made three objections relating to damages. They were: (1) it was error to charge that grief was a proper item of damage; (2) the charge improperly allowed the jury to include compensation for loss of companionship and destruction of the parent-child relationship throughout the life of the decedent, rather than limiting the duration to the decedent's minority;[2] and (3) the interrogatory should not set out grief as a separate compensable item. The latter objection was phrased as follows: "We think that grief to the extent that it's properly in the case is an integral part of the claim and that the court is inviting confusion and double recovery by setting it as a separate item on that sheet." The trial judge then explained that he itemized the grief element on the interrogatory because there was likely to be an appeal if the jury awarded any amount for that element and he wanted the rest of the judgment to stand alone should there be a reversal. The City's counsel then added: "to ask them to separate [grief and mental anguish] out, is, I think, impossible."

We conclude that to whatever extent error might be said to be in the interrogatories, the City failed to preserve its objection as required by V.R.C.P. 51(b). We start our analysis with the court's power to use special interrogatories in this case. The trial court has discretion to use "written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." V.R.C.P. 49(b). The identical federal rule has been interpreted as giving the trial courts "unreviewable discretion" in this area. See 9 C. Wright & A. Miller, Federal Practice & Procedure § 2511, at 522 (1971). We do not need to resolve the extent of discretion to uphold the use of special interrogatories on damages in this case. We have encouraged use of interrogatories where a case is complex because of multiple overlapping theories of liability. See *Allen v. Uni-First Corp.*, 151 Vt. 229, 232, 558 A.2d 961, 963 (1988). We similarly encourage use of special interrogatories in cases like this to avoid a need for complete retrial where a case involves a single, severable issue to be resolved ultimately on appeal. See 9 C. Wright & A. Miller, Fed-

[2] The City has not pursued this issue on appeal.

eral Practice & Procedure § 2511, at 521 (1971); Guinn, *The Jury System & Special Verdicts*, 2 St. Mary's L.J. 175, 179 (1970).

■ The plaintiff was entitled to have the jury squarely resolve the issue of grief and mental anguish in this case. See *Allen v. Uni-First Corp.*, 151 Vt. at 232, 558 A.2d at 963 (court is required to charge on every issue essential to resolution of the controversy). Thus, the court was required to charge specifically on this element of damage. In doing so, it used a way of cataloguing the nonpecuniary damage elements into positive and negative elements that has been employed in other cases. See *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 585 n.17 (1974); 1 S. Speiser, Recovery for Wrongful Death 2d. § 3:52, at 327 (1975). In view of defendant's persistent objections to jury consideration of grief and mental anguish as an element of plaintiff's damages, the trial court was clearly within its discretion in submitting a special interrogatory on this element.

If there is any shortcoming in the interrogatories, it lies in the first component of the damage interrogatory that allowed the jury to make an award for "loss of love and companionship, and for destruction of the parent-child relationship" without explicitly specifying that the jury must not consider grief and mental anguish as part of this element.[3] If reversal were indicated, it would apply only to the $378,000 award that the jury made under this element and not the $163,000 the jury awarded for grief and mental anguish.[4] The most we could say about this award is that the jury's action was ambiguous and the plaintiff must have another opportunity to submit evidence on nonpecuniary loss, apart from grief and mental anguish.

However, the City never questioned the first component of the damage interrogatory; its objection went solely to the sec-

---

[3] As already pointed out, the court did make a general statement to the jury that they should attempt to separate out these different charge elements and that they should not award damages for the value of a life.

[4] The jury answered the interrogatories by showing plaintiff's total damages in those categories. After adding amounts, it multiplied the total by the percentage of negligence attributed to the defendant. The numbers in the text represent the jury's award (plaintiff's damages times percentage of negligence) for each element.

ond component. Following the verdict in this case, the City tendered to the plaintiff a check for $223,000, representing the jury award on the first component less amounts received by plaintiff from other defendants who settled prior to trial. When plaintiff refused the tender, the City moved to deposit the money into court specifying that the amount represented the portion of the judgment awarded to plaintiff "for loss of love and companionship and loss of the parent/child relationship." It further stated that the deposit was partial in order to preserve its right to appeal on the issue of recovery for grief and mental anguish.

Under V.R.C.P. 51(b), the City had an obligation to object to the portions of the charge or interrogatories it challenged, "stating distinctly the matter objected to and the grounds of the objection." We find that the City complied with the rule with respect to the interrogatory component on grief and mental anguish. We cannot find, however, that the City did so with respect to the rest of the damage interrogatory. See *Grazulis v. Curtis*, 149 Vt. 371, 373, 543 A.2d 1324, 1325 (1988) (objection must apprise the trial judge sufficiently for the "judge to make an intelligent response").

To allow the City to have a retrial on nonpecuniary loss, other than grief and mental anguish, would undercut the trial judge's shaping of the issues to avoid retrial, without providing notice to the judge, and would also reopen the issue the City stated was closed in their tender of payment. We do not believe that the City has preserved its right to challenge the component of the damage interrogatory that does not deal with grief and mental anguish.

Defendant's second major ground for appeal is that the trial court did not require expert testimony on the issue of parental grief and mental anguish. This issue arose when the plaintiff, mother of the three children, testified of her reaction of grief to the death of the children. In response to the objection, the trial court ruled that lay persons can understand grief reactions and expert testimony was not required.

In arguing that expert testimony was required, the City relies primarily on cases involving medical care issues. See, e.g.,

*Senesac v. Associates in Obstetrics & Gynecology*, 141 Vt. 310, 313, 449 A.2d 900, 902 (1982). We have, for example, required expert witnesses to show medical malpractice because the jury was required "to answer a technical and scientific question of fact." *Largess v. Tatem*, 130 Vt. 271, 278–79, 291 A.2d 398, 403 (1972). Even in medical malpractice cases, if the jury can judge a physician's care based only on "common knowledge and experience," expert testimony is not required. *Id.* at 279, 291 A.2d at 403. In a related area, we have allowed reliance on lay testimony to show the continued existence of pain because the matter was largely subjective within the peculiar knowledge of the injured party. *Merrill v. University of Vermont*, 133 Vt. 101, 105, 329 A.2d 635, 637 (1974).

We are often faced in the law with damages that are difficult to ascertain, even "speculative and uncertain." *Hay v. Medical Center Hosp. of Vermont*, 145 Vt. 533, 541, 496 A.2d 939, 943–44 (1985). Even though damages are difficult to compute, we cannot be deterred from making the best approximation possible. *Hilder v. St. Peter*, 144 Vt. 150, 162, 478 A.2d 202, 209 (1984).

Our statute requires the jury to award such nonpecuniary loss damages as they find "under all the circumstances of the case, may be just." 14 V.S.A. § 1492(b). In *Sawyer v. United States*, 465 F. Supp. 282, 292 (E.D. Va. 1978), the court reasoned about a similar Virginia statute:

> Needless to say, loss of comfort, guidance and society, like sorrow, mental anguish and solace, are virtually incalculable except in a rough and gross manner. . . . Money is no substitute, and under our statute the amount which may be awarded is what "may seem fair and just." Such an award is not suggested or intended to be replacement of the loss sustained. . . .

> Damages in a death case where the measure is what is fair and just, like in personal injury actions, is to be determined from all of the facts and circumstances. As pointed out in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 590 . . . (1974), damages for loss of society can be left to turn mainly upon the good sense and deliberate judgment of the trier, as "insistence on mathematical precision would be il-

lusory," and the judge or jury must be allowed to make a reasonable approximation, guided by judgment and practical experience. It is enough if the evidence shows the extent of damages as a matter of a just and reasonable inference, although the result be only an approximation.

Given the nature of the damage issue before the jury, the United States Court of Appeals for the Fourth Circuit upheld a trial court ruling excluding expert testimony in support of a wrongful death plaintiff's claim for mental anguish. *El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483, 487 (4th Cir. 1986).

In *Saint Louis Southwestern Railway v. Pennington*, 261 Ark. 650, 670–83, 553 S.W.2d 436, 446–52 (1977), the Supreme Court of Arkansas made a detailed and extensive analysis of the factors bearing on an award for mental anguish and the evidence to be admitted on the factors. The court set forth thirteen factors, including the nature of the relationship between the decedent and the survivor, the duration and intensity of sorrow and grief, and the nature of the death. *Id.* at 678–79, 553 S.W.2d at 450; see also *Martin v. Rieger*, 289 Ark. 292, 296, 711 S.W.2d 776, 778 (1986) (summarizes the thirteen factors). The Arkansas list includes all the factors we can conceive of being relevant to evaluate damages for grief and mental anguish.

We do not believe that any of these factors involve such technical and scientific issues that a jury is incapable of understanding and weighing the evidence without expert testimony. All involve matters within the common knowledge and experience of the jury. We believe that the jury can evaluate all the circumstances of the case and make a just award without expert testimony. There is no error.

*Affirmed.*

**Peck, J.,** dissenting. The majority opinion illustrates the motivation for the gradually increasing demand in this country for reforms of the tort law. As that law has developed by judicial activism, the courts have made of themselves a virtual lottery, continually finding new grounds upon which to base liability in the litigation explosion which is swamping their case loads. All too often this pattern contributes to enormous and unjustified

verdicts. Understandably confused by the bewildering legalese of instructions in the law given to them from the bench, juries are easily tempted into verdicts based on subjective emotions and sympathy.

In this case, the majority has seized on words which do not even appear in the controlling statute, 14 V.S.A. § 1492(b), that is, "mental anguish and grief," to create *two* separate and supposedly unrelated damage amounts: first, those damages *expressly* allowed by § 1492(b), and secondly, that pure legislative invention of the judicial mind (quoted above), "mental anguish and grief." If the jury finds both to exist (based on exactly what is a mystery), it must combine and then "add the two amounts to calculate 'total damages.'"

I am in complete accord with the defendant's argument that this theory *necessarily* permits double recovery. I would go even further and say it not only permits double recovery, it creates a virtual certainty of such a result. The majority's attempt to separate the intent of the statute into two separate elements is judicial legislation at it worst. Nor am I at all impressed by the precedential citations relied upon; there are only two, to begin with; for practical purposes only one, since the second state court decision simply adopts and follows the first. Now the majority of this Court follows in line sheep-like, substituting the unsound reasoning of these precedents for clear and independent thinking. But also there must be precedents though the heavens fall! And indeed, in this case, the heavens fell—right on the defendant.

I will explain briefly my own rationale. How anyone can separate out the "loss of love and the companionship" of a deceased child, from "mental anguish and grief" arising from the same loss (reiterating that the latter phrase is pure judicial, not statutory, legislation) is incomprehensible. The one is as much a part of the other as darkness is a part of the night. Certainly, the majority makes no effort to clarify or distinguish the difference, other than to label one positive and the other negative, a distinction as meaningless and unexplainable as the underlying proposition itself. Accordingly, I concur with the defendant's position that damages for grief is not a separate item of dam-

ages since it is included in so-called first item and contained within the meaning of the express language of the statute. There is no need or justification for the language added to the statute by the majority opinion.

Reversal is the only fair answer to this appeal since a double recovery already exists in the jury's verdict. Because of the confusion which must have resulted from the trial court's attempt to make two out of one, I suspect that the understandable promptings of sympathy very likely played a major role in the verdict.

> [G]reat caution should be exercised . . . to guard against the element of sympathy playing any part in the result. [This] case seems to me particularly susceptible to such a possibility.

*Roberts v. State,* 147 Vt. 160, 174, 514 A.2d 694, 702 (1986) (Peck, J., concurring in part and dissenting in part). The majority has ignored and violated this Court's own long standing rule that it is not

> a legitimate function of this Court to expand a statute by implication, that is, by reading into it something which is not there, unless it is *necessary* in order to make it effective. *Saund* v. *Saund,* 100 Vt. 387, 393, 138 A. 867, 870 (1927). To do so would usurp the exclusive prerogative of the Legislature; it would constitute judicial legislation, *Maurice Callahan & Sons, Inc.* v. *Armstrong,* 125 Vt. 213, 215, 214 A.2d 70, 73 (1965) (citing *Murphy Motor Sales, Inc.* v. *First National Bank,* 122 Vt. 121, 124, 165 A.2d 341, 343 (1960)), and violate the border lines drawn by the constitutional doctrine of separation of powers. Vermont Constitution, Chapter II, § 5.

*State v. Jacobs,* 144 Vt. 70, 75, 472 A.2d 1247, 1250 (1984) (emphasis in the original).

The wrong done the defendant by the majority's decision not only expands § 1492(b) by implication, and reads into it language which is not there, but even more egregious and unjust, it authorizes, indeed it virtually mandates, double recovery against this and future hapless defendants. I cannot condone

this consequence by silence. Accordingly, I must dissent. A proper and fair result requires reversal.