Allen v. Sw. Vt. Med. Ctr., Inc., No. 334-9-10 Bncv (Hayes, J., Nov. 28, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT

SUPERIOR COURT                                    CIVIL DIVISION
Bennington Unit                                   Docket No. 334-9-10 Bncv

Jodi Allen, as Administrator
of the Estate of Christopher King
  Plaintiff

 v.

Southwestern Vermont
Medical Center, Inc.
  Defendant

DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Jodi Allen, as administrator of her deceased father's estate, has filed this action against

Southwestern Vermont Medical Center under Vermont's Wrongful Death Act, 14 V.S.A. § 1492.  In her

amended complaint, plaintiff seeks damages for the following injuries:

> [M]edical expenses, funeral expenses, and pecuniary injuries for loss of support and services, loss of intellectual, moral and physical training, loss of care, nurture and protection, grief and mental anguish and the loss of comfort, love and companionship and . . . the destruction of the parent-child relationship.

Amended Complaint 5 (emphasis added).  In its amended answer, defendant originally asserted five

affirmative defenses: (1) " failure to state a claim upon which relief can be granted, particularly, but not

solely related to claims for compensation for grief and/or mental anguish, and including any requests for

damages not permitted under the provisions of 14 V.S.A. § 1492, et seq.";  (2) contributory negligence;

(3) compliance with the applicable standards of care; (4) failure to mitigate; (5) bar to suit under 12

V.S.A. § 519 (relating to emergency medical care). Amended Answer 3-4.  In the instant motion for

partial summary judgment, plaintiff argued that defendant's first, fourth, and fifth affirmative defenses

had no basis in law or fact.  In its response, defendant withdrew its fourth and fifth affirmative defenses.

As a result, the sole remaining issue confronting the court is whether grief and mental suffering are compensable under the Wrongful Death Act.

For the purposes of this motion, the following material facts are undisputed. On January 2, 2010, decedent Christopher King was admitted to the Southwestern Vermont Medical Center to undergo hemodialysis. While undergoing the treatment, Mr. King was eating a sandwich; at some point during the treatment, Mr. King began to choke on that sandwich. Medical personnel at the hospital responded to the situation and attempted to revive Mr. King, but their efforts were ultimately unsuccessful. Mr. King died on January 5, 2010; his death certificate states the cause of death to be "Anoxic Brain Injury" resulting from "Aspiration of Food." Plaintiff sues under a theory of medical negligence. Defendant denies any negligence, but argues that even if plaintiff proves that the defendant did act negligently, and that negligence caused her father's death, her recovery as his next of kin under the Wrongful Death Act may not include grief and mental anguish.

## DISCUSSION

The Wrongful Death Act provides that:

> The court or jury before whom the issue is tried may give such damages as are just, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin or husband and next of kin, as the case may be. In the case where the decedent is a minor child, the term pecuniary injuries shall also include the loss of love and companionship of the child and for destruction of the parent-child relationship in such amount as under all the circumstances of the case, may be just.

14 V.S.A. § 1492(b). Initially, the court notes that Vermont case law clearly establishes the plaintiff's right to recover for most of the types of damages she claims in her complaint. See generally *Mobbs v. Central Vermont Railway*, 150 Vt. 311, 316 (1988). The parties' arguments here are focused on whether, in addition to damages for financial losses and direct expenses, destruction of the parent-relationship and loss of love and companionship, the plaintiff can recover for grief and mental anguish.

2

The first sentence of § 1492(b) was included in the original version of the act, passed in 1849. 1849 Vt. Laws 8, § 3. The legislature added the second sentence in 1976, borrowing from a nearly identical Washington statute. See 1975 Vt. Laws 223, § 1; *Hartnett v. Union Mutual Fire Insurance Co.*, 153 Vt. 152, 154 (1989) ("The statutory language of the 1976 amendment to § 1492(b) was taken from a Washington statute . . ."); Wash. Rev. Code Ann. § 4.24.010.

It is well-established under Vermont case law that the term "pecuniary injuries" is not limited to economic losses. In *Mobbs*, a car containing an adult father and mother, and three minor children collided with a train at a railroad crossing. Both parents and the youngest child were killed, but the two older children survived and were the next of kin. The Court held, in that context, that: "The term 'pecuniary injuries' does not limit recovery to purely economic losses. In cases where it has been construed by this Court, the term has been held to contemplate compensation for lost intellectual, moral and physical training, or the loss of care, nurture and protection." *Mobbs* , 150 Vt. at 316 (citing *Lazelle v. Town of Newfane*, 70 Vt. 440, 445 (1898)).

As the Supreme Court noted in *Hartnett v. Union Mutual Fire Insurance Co.*, 153 Vt. 152 (1989), a case involving the tragic death of three young children in a house fire, the 1976 amendment to the Act was intended to clarify the rights of parents to recover damages for the deaths of minor children. The court noted that the addition to the statute, which specifically focused on minor children's deaths, was necessary because "the pecuniary loss rule has been particularly controversial in cases where the decedent is a child because it often allows no recovery at all." *Hartnett,* 153 Vt. at 152 (citation omitted). Relying on Washington case law interpreting that state's virtually identical statute (as noted above) , the Court declared: "We share the Washington Court's conclusion that the term 'destruction of the parent-child relationship' must include grief, mental anguish and suffering or it is largely a meaningless concept." *Id.* at 156. Although the *Hartnett* case does not directly state that loss of love and companionship also includes grief and mental anguish, it relies on the Washington case *Wilson v.*

3

*Lund*, 80 Wash.2d 91 (1971), which makes reference to "loss of love" as well as destruction of the parent-child relationship. *Id.* at 96.

In *Clymer v. Webster*, 156 Vt. 614 (1991), a case in which parents filed their claim under the Act for the death of their 18-year-old daughter, killed by a drunk driver, the court stated that "loss of love and companionship of an adult child is a real, direct and personal los that can be measured in pecuniary terms. Children have an intrinsic value to their parents regardless of who is supporting whom at the time of death." *Id.* at 629. Since then, the Court has gone on to clarify that the right to recover for loss of companionship under the Act also extends to adult siblings, *Dubaniewicz v. Houman*, 2006 VT 99, 180 Vt. 367.

Based on the reasoning of *Hartnett, Wilson*, and *Clymer*, this court concludes that "pecuniary injury" under § 1492 does include grief and mental anguish directly caused by the destruction of the parent-child relationship and loss of love and companionship, whether the claim is made by a child or a parent. The court notes that this conclusion appears to be contrary to that reached in a 2009 trial court opinion issued by the Chittenden Superior Court cited by defendant in this case. See *Murphy v. Sentry Insurance*, No. S0654-06 CnC, slip op. at 5 (Oct. 15, 2009) (Toor, J.). This court recognizes that before the 1976 amendments, grief and mental anguish were viewed as non-pecuniary and therefore not compensable under the Act. *Lazelle,* 70 Vt. at 443-44 ("[T]he jury are confined to the pecuniary loss sustained by the widow or next of kin, and cannot take into consideration their grief or suffering . . ."). However, this court concludes that the amendment to the statute in 1976, and the Supreme Court's subsequent decisions in *Mobbs, Hartnett, Clymer,* and *Dubaniewicz* clearly signaled that the same kinds of damages are available in all wrongful death claims in Vermont, whether for the deaths of adult relatives or minor children, and whether brought by parents, children, or other next-of-kin. This court concludes that it is bound by the Supreme Court's unambiguous statement that the 1976 amendment of the act was intended "not to limit the damages available to the relatives of adult decedents, but rather

4

to further the remedial purposes of the WDA by developing the definition of pecuniary injuries."

*Clymer*, 126 Vt. at 625-26.

Accordingly, the plaintiff is entitled to attempt to prove grief, mental anguish and suffering to the extent that it relates to loss of love and companionship of her father and destruction of the parent-child relationship. However, based on the limited undisputed facts presented, the court is unable to determine whether the plaintiff will be able to present evidence sufficient to create a jury question on whether the loss of companionship, and the destruction of her relationship with her father did in fact cause her grief and mental anguish. The court is also not determining here whether such damages are subsumed within and a part of any recovery for the loss of the relationship. The decision to grant the plaintiff's motion for summary judgment as to the defendant's "affirmative defense" alleging that the plaintiff failed to state a claim for which relief could be granted under § 1492 by requesting compensation for grief and mental anguish, is essentially the grant of a motion to dismiss this defense under V.R.C.P. 12 (b). However, it means only that the plaintiff may be entitled to recover such damages, if she is able to prove them. She still has the burden of proof.

<u>ORDER</u>

Plaintiff's Motion for Partial Summary Judgment (MPR #3), filed September 21, 2011, is

(1) *granted* based on the defendant's agreement, with respect to defendant's affirmative defenses #4 and 5;

(2) *granted* with respect to defendant's affirmative defense #3 as described above.

Dated at Bennington, Vermont this 28th day of November, 2011.

_____
Katherine A. Hayes
Superior Court Judge

5