CHITTENDEN COUNTY CLERK
FILED IN CLERK'S OFFICE

JUN 18 2002

DIANE A. LAVALLEE
CLERK

## STATE OF VERMONT
## CHITTENDEN COUNTY, SS.

| | | |
|---|---|---|
| MICHELLE NORTON, Individually, | ) | |
| as next friend of minor Kyle Fitzgerald | ) | |
| and as Administratrix of the | ) | |
| Estate of Wayne Norton, | ) | |
| Plaintiff, | ) | |
| | ) | Chittenden Superior Court |
| v. | ) | Docket No. S409-00 CnC |
| | ) | |
| KIMBERLY ANN JARVIS, | ) | |
| ALLEN DAVIS, and MALLETTS BAY | ) | |
| DRIVE-IN, INC. | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION

### Defendants' Motion for Partial Summary Judgment filed October 11, 2001.

This matter is before the Court on Defendants' Motion for Partial Summary Judgment filed October 11, 2001. Plaintiff's response was filed on November 8, 2001. Defendants' reply to Plaintiff's response was filed on December 3, 2001. Plaintiff is represented by Thomas E. McCormick, Esq. Defendants are represented by Robert G. Cain, Esq.

The following facts are undisputed and are stated in both the Plaintiff's and Defendants' Statement of Facts, supporting affidavits and documents. On April 11, 1998, Wayne Norton was fatally injured while operating his all-terrain vehicle (ATV) on real property formerly known as the "Malletts Bay Drive-In," in Colchester, Vermont. At the time of the accident, Wayne Norton was married to Plaintiff Michelle Norton. The Nortons were married on February 14, 1998.

Plaintiff Michelle Norton is the biological mother of Kyle Fitzgerald, who was born on December 31, 1988. Plaintiff and Kyle's biological father, Brian Fitzgerald, were divorced in June 1992, and Plaintiff has custody of Kyle. Over the years, Brian Fitzgerald has seen Kyle a day or two a month. Since 1992, Plaintiff, Kyle and Wayne Norton lived together. Wayne did not have any legal or biological children. At the time of this death, he had not adopted Kyle.

Kyle and Wayne had a father-son relationship. Kyle called Wayne "Dad" and Wayne cared for Kyle daily and on the weekends when Kyle was not with Brian Fitzgerald. They participated in father-son activities such as playing baseball and riding bicycles. Wayne also contributed to the care of Kyle with necessities such as food and rent. According to the Plaintiff, "Wayne was a 'father' to Kyle in every sense of the word and the relationship that existed

-1-

between them was love, trust, dependence and family."[1]

After Wayne's death, Plaintiff filed suit against the property owners and manager of the Malletts Bay Drive In, Inc., on behalf of Wayne Norton's estate, herself and her son Kyle. Defendants now seek Partial Summary Judgment with respect to Plaintiff's claims on behalf of Kyle Fitzgerald. According to the Defendants, damages are not recoverable on behalf of Kyle because he is not Wayne Norton's "next of kin" as defined by Vermont's Wrongful Death Act (hereinafter WDA), 14 V.S.A. §§ 1491-1492. Plaintiff responds with two arguments: 1) that the statute is remedial in nature and should be construed liberally to include stepchildren such as Kyle; and 2) the WDA is unconstitutional pursuant to the Common Benefits Clause of the Vermont Constitution to the extent that it bars claims by stepchildren.

## CONCLUSIONS

Plaintiff's first argument, that because Vermont's WDA is remedial, it should be construed to allow recovery by stepchildren, is not supported by current case law. As a preliminary matter, the Plaintiff is correct that the WDA is itself remedial in nature. See e.g., Hartnett v. Union Mut Fire Ins. Co., 153 Vt. 152, 153 (1989) ("Vermont's Wrongful Death Act is a remedial statute."); Vaillancourt v. Medical Center Hosp. Of Vt., 139 Vt. 138, 141 (1980) (same). The WDA is "designed to alleviate the harsh common law rule of no liability because the person injured had died." Vaillancourt, 139 Vt. at 141. In this context, the WDA allows a decedent's spouse or next of kin to recover for liability in the death of their spouse or next of kin, whereas the common law did not. In that sense, the WDA is remedial in that the Legislature has created a remedy for specified persons not otherwise entitled to one under the common law.

Calling a statute remedial in nature does not automatically mean that its remedy is available to persons other than those specified in the statute, which in this case include only the spouse or next of kin.[2] The statute is specific in that a "court or jury before whom the issue is

---

[1] This fact is undisputed. The statements of undisputed facts contain incomplete information about the nature of the relationship between Kyle and his father Brian Fitzgerald.

[2] Plaintiff cites Clymer v. Webster, 156 Vt. 614 (1991) at length for the proposition that the remedial nature of the statute can be utilized to expand recovery for persons such as stepchildren. Plaintiff indicates that "[e]very case must stand on its own facts and circumstances" and that "the court or jury should consider the physical, emotional, and psychological relationship between the parents and the child." (Pl.'s Opp'n to Mot. for Summ. J. at 6) (citing Clymer, 156 Vt. at 630). Plaintiff's reliance on Clymer for this proposition is misplaced. Not only are the recited portions of Clymer dicta, but the Clymer Court's analysis did not concern the issue involved in this case, specifically, determining who is entitled to recover under the WDA. The entire discussion in Clymer cited by the Plaintiff instead relates to whether the loss of companionship of an adult child constitutes pecuniary injury under the statute. Clymer, 156 Vt. at 630.

-2-

tried may give such damages as are just . . . *to the wife and next of kin or husband and next of kin*, as the case may be." 14 V.S.A. § 1492 (emphasis added). In interpreting the WDA, the Vermont Supreme Court has relied on the remedial nature of the Act to interpret its coverage to include different types of *injury* recoverable under the statute. See e.g., Clymer v. Webster, 156 Vt. 614, 629 (1991) (loss of companionship of adult child may constitute pecuniary injury under the state); Hartnett, 153 Vt. at 156 (parental grief and mental anguish recoverable under the statute); Mobbs v. Central Vermont Railway, 150 Vt. 311, 316 (1988) (pecuniary injury not limited solely to economic loss). However, the Court has never sanctioned recovery for persons not considered either the wife or husband or next of kin. Rather, the Court has consistently adhered to the traditional definition of next of kin, that is, "those persons most nearly related to the decedent by blood." Whitchurch v. Perry, 137 Vt. 464, 472 (1979) (citing Black's Law Dictionary 1194 (rev. 4th ed. 1968)).

In this case, Kyle Fitzgerald does not fit the definition of next of kin. He is not related to Wayne Norton by blood. The fact that the statute is remedial in the context of providing recovery for the death of a spouse or next of kin does not change the plain language of the statute limiting recovery to the spouse or next of kin. See e.g., Burlington Elec. Dept. v. Vermont Dep't of Taxes, 154 Vt. 332, 335-336 (1990) (quoting Hill v. Conway, 143 Vt. 91, 93 (1983) (when the meaning of a statute is plain on its face, the Court will enforce the statute according to its terms for "there is no need for construction; the legislative intent is to be ascertained from the act itself"). Kyle is not considered next of kin under the statute and thus damages are not recoverable on his behalf.

In her second argument, Plaintiff contends that the WDA is unconstitutional pursuant to the Common Benefits Clause of the Vermont Constitution because it bars claims by stepchildren. Relying on Baker v. State, 170 Vt. 195 (2000), Plaintiff argues that limiting recovery under the WDA to those in a "traditional family" violates the "principle of inclusion" expressed in the Common Benefits Clause and enshrines favoritism toward a particular form of family. In addition, according to the Plaintiff, Kyle's exclusion from statutory benefits under the WDA does not bear a "reasonable and just relation to the governmental purpose" of the statute. Id. at 214.

In 1997, prior to the Baker decision, the Vermont Supreme Court addressed the propriety of limited recovery under the WDA to one class of beneficiaries in the context of an equal-protection challenge to the statute in Quesnel v. Town of Middlebury, 167 Vt. 252 (1997). At the time of the Quesnel decision, the Court often used the equal-protection analysis under the Fourteenth Amendment of the federal constitution as the standard for analysis under the Common Benefits Clause of the Vermont Constitution. See e.g., Baker, 170 Vt. at 202-206 (and cases cited therein). In Quesnel, the Plaintiffs claimed they were denied equal protection and due process because they could not "recover for the wrongful death of their son whereas parents of an adult child who die[d] without a surviving child [were] entitled to wrongful death recovery." Quesnel, 167 Vt. at 257. In examining whether the WDA served a legitimate purpose, the Court noted:

Here, the Legislature has limited defendants' liability to one class of persons, the spouse and next of kin. It is conceivable that the Legislature imposed this limit to prevent the possibility of diluting the recovery. By limiting the tortfeasor's liability to a single class of persons, the Legislature has ensured the tortfeasor's assets will be preserved for the preferred class. This is particularly important where funds available to satisfy any judgment are limited. *Although persons other than the spouse and next of kin may suffer economic and personal loss due to the death of an individual, the Legislature may protect the preferred beneficiaries by limiting those who may recover.* . . . Allowing damages for loss to other persons creates more opportunity for conflict between survivors, complicating and prolonging the proceedings as well as adding to their cost. Because we can conceive of several legitimate purposes that the statute may serve, we cannot conclude that the statute is without rational basis.

Id. at 257-258 (emphasis added) (citations omitted).

Based on the Court's analysis in Quesnel in 1997, it is apparent that under a Fourteenth Amendment equal-protection analysis, the WDA serves a legitimate purpose in restricting the class of beneficiaries to only the spouse and next of kin. Under Quesnel, Kyle Fitzgerald is not entitled to recover for the wrongful death of Wayne Norton despite their apparent close relationship. As the Court noted, although "[s]ome cases present strong arguments for expanding this liability to losses suffered by other people close to the decedent . . . . such arguments should be addressed to the Legislature, not the courts." Id. at 259 (citations omitted). It was reasonable for the Legislature to limit the class of beneficiaries using clear cut guidelines so as to avoid a fact-based analysis of the personal relationship in every case and to avoid multiplying exponentially the number of potential claimants under the WDA.

In the wake of Baker, a different analysis is called for in determining whether the WDA's limits on the class of claimants violates the "principle of inclusion" in the Common Benefits Clause. Baker, 170 Vt. at 213-214. Cf. 170 Vt. at 235 and 170 Vt. at 252, 255.

When a statute is challenged under the Common Benefits Clause, the mode of analysis begins with defining the "'part of the community' disadvantaged by the law." Id. At 213. Next, the analysis looks to the governmental purpose behind the classification that excludes members of the community and examines the "nature of the classification to determine whether it is reasonably necessary to accomplish the State's claimed objectives." Id. At 214. Finally, the analysis asks whether the "omission of a part of the community . . .bears a reasonable and just relation to the governmental purpose." Id. Under the standard, if the classification is reasonably necessary to accomplish the claimed objectives of the governmental purpose, and the exclusion of part of the community bears a reasonable and just relation to that purpose, then the statute can be enforced consistent with the Common Benefits Clause.

-4-

Applying the standard enunciated in <u>Baker</u>, the court concludes that the exclusion under the WDA of claims by stepchildren for the wrongful death of a stepparent is not unconstitutional under the Common Benefits Clause.[3]

In this case, the community disadvantaged by the WDA includes those persons with an economic or personal relationship to the decedent who are not either a spouse or next of kin. More specifically, as claimed by Plaintiff, the community includes stepchildren who have a parent-child relationship with their stepparents. It is important to note that recovery is available to a stepchild for the wrongful death of both of his legal parents, and every person in Vermont has an available remedy under the WDA for the wrongful death of a spouse or next of kin.

To the extent that the definition of the excluded community is limited to stepchildren, there is a wide variety of stepparent/stepchild relationships. Some supplant in a comprehensive way all economic and personal aspects of a child's economic and personal relationship with a legal parent; others provide a supplementary personal and/or economic relationship to an otherwise intact and active parent-child relationship between the child and his or her noncustodial legal parent. Other stepchild/stepparent relationships may be nonexistent, and others may be hostile or harmful. For purposes of a <u>Baker</u> analysis, it is difficult to define an excluded community, since determining whether, in a given case, a stepchild is deprived of a meaningful remedy under the WDA requires a review of all the specific facts of that particular relationship.

The fact that it is difficult as a practical matter to define the community disadvantaged by the WDA without resort to the specific facts of every individual relationship highlights the reasonableness of deferring to the choices made by the Legislature in defining the characteristics of those eligible for the remedy, as long as the lines drawn by the Legislature have a reasonable basis in policy.

The second part of the analysis calls for a definition of the governmental purpose of the classification in the statute. As discussed by the Court in <u>Quesnel</u>, the governmental purpose includes preventing the possibility of diluting the recovery available to the beneficiaries most in need, ensuring that "the tortfeasor's assets will be preserved for the preferred class," and preventing opportunities for conflict between survivors, as well as preventing conditions which could complicate, prolong, and increase the cost of receiving benefits. <u>Quesnel</u>, 167 Vt. At 257-258. These are reasonable objectives as a matter of social policy. They ensure that benefits go

---

[3]Under <u>Baker</u> and subsequent legislation, a partner in a civil union has the same right to recover as a spouse under the WDA for the wrongful death of a partner. 15 V.S.A. §§1204(b) ("[a] party to a civil union shall be included in any definition or use of the term 'spouse' [and]. . . next of kin' . . . as those terms are used throughout the law"); 15 V.S.A. §1204(c)(2). A person seeking a remedy under the WDA for the loss of a partner in a same sex relationship that was *not* a recognized civil union under the civil union law would stand in the same position as Kyle in this case.

where they are most needed to replace a loss, and that they do so quickly and efficiently without creating conflict and strife in family relationships.

Finally, the exclusion of beneficiaries under the WDA bears a just and reasonable relation to the stated governmental purposes. If the remedy were available to anyone in a stepchild relationship, those in the defined preferred class (generally spouse, legal children, and parents) would have to compete for benefits with a potentially significantly increased number of claimants (stepchildren and stepparents). Proceeds available to the spouse and next of kin would be diluted, and the cost and complication of dealing with competing post-death claims could be increased significantly. There could easily be increased interfamily and intrafamily friction. Furthermore, if Kyle were permitted a remedy under the WDA for Wayne's death, the same logic would allow a stepparent to recover for a stepchild's death, thereby creating a contest for finite benefits between a legal parent and a step parent for the death of a child. Given the potentially harmful collateral consequences, it is reasonable for the Legislature to have chosen to prevent these ills, and the limitation on recovery under the WDA to a spouse and next of kin reasonably does so.

Whether the issue is viewed under the Fourteenth Amendment equal protection clause traditionally used for the Common Benefits Clause under the Vermont Constitution, or the approach set forth in the opinion in Baker v. State, Plaintiff's claim, that the Wrongful Death Act is unconstitutional as applied to a stepchild seeking to recover for the loss of a stepparent, cannot succeed.

## ORDER

For the foregoing reasons:

Defendants' Motion for Partial Summary Judgment is *granted* with respect to Plaintiff's claims on behalf of Kyle Alexander.

Dated at Burlington this 18 of June, 2002.

_____
Hon. Mary Miles Teachout
Superior Judge, presiding