2006 VT 99

## Dennis J. Dubaniewicz, Executor of the Estate of Michael P. Dubaniewicz v. Robert Houman, Linda LaPenna, St. John's Sporting Goods, Inc., Thomas St. John and Dorothy St. John

[910 A.2d 897]

No. 04-306

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Burgess, D.J.,** Specially Assigned

Opinion Filed September 15, 2006

*Patrick M. Ankuda* of *Parker & Ankuda, P.C.*, Springfield, for Plaintiff-Appellant.

*Samuel Hoar, Jr.* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff appeals the superior court's order denying him any damages for the default judgment he obtained in this wrongful death action. We concur with the court's ruling that plaintiff is not entitled to damages for the decedent's alleged pain and suffering, but we conclude that the court erred by refusing to compensate plaintiff for funeral and burial expenses and by holding that the loss of companionship of an adult sibling is not compensable under the wrongful death act. Accordingly, we affirm in part, reverse in part, and remand the matter for further consideration in light of this decision.

¶ 2. Plaintiff is the executor of the estate of his brother, who died of a gunshot wound in March 1998. The shooting was treated as a homicide, but no charges have been filed. Believing that his brother was murdered by the two people living in his brother's home, plaintiff filed a civil suit in January 2000 against them and the owners of the sporting goods store that sold the weapon used to kill his brother. The defendant who purchased the weapon was a convicted felon, and he was incarcerated after pleading guilty to being a felon in possession of a firearm. Eventually, plaintiff settled his claims against the owners of the sporting goods store and obtained a default judgment on liability against his brother's house guests. The superior court held a hearing on damages in April 2004.

¶ 3. Following the hearing, the court ruled that plaintiff is not entitled to damages for (1) his brother's pain and suffering because plaintiff failed to present expert medical testimony or other evidence demonstrating that his brother did not die instantaneously; (2) the loss of his brother's future wages because plaintiff failed to demonstrate that his brother ever financially supported his siblings; (3) the loss of his brother's society and companionship because loss of companionship of an adult sibling is not compensable under the wrongful death act; (4) burial expenses because they are not recoverable; and (5) certain losses related to the sale of the decedent's home because they were losses of the estate and not plaintiff as next of kin.

¶ 4. On appeal, plaintiff first argues that the superior court erred by denying damages for his brother's pain and suffering. Plaintiff contends that the investigating state trooper's testimony suggesting that the decedent moved from one room to another in his home after being shot and before dying supported his claim for pain-and-suffering damages. We agree with the superior court that the evidence in this case was too speculative to support an award for pain and suffering.

■ ¶ 5. Plaintiff did not present any expert medical testimony regarding the nature of the wound or how long the decedent may have lived after he was shot. The trooper expressed his belief that the decedent had moved himself rather than being moved after he was shot, but that testimony was only his best guess as to what happened. There were no eyewitnesses. No one could say whether the decedent died instantaneously, or, if not, how long he lived after he was shot. Indeed, appellant himself concedes that no one knows what, if any, pain the decedent experienced. Under these circumstances, we find no basis to overturn the superior court's refusal to award damages for pain and suffering. Cf. *Estate of Long v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 86 (Iowa 2002) (denying damages for pre-death mental and physical pain because estate failed to meet its burden of showing, by substantial evidence, that decedent was sufficiently conscious in extent and time to suffer pain).

■ ¶ 6. Next, plaintiff argues that the superior court erred by failing to award him damages for the loss of his brother's companionship. Our wrongful death statute allows the court or jury to "give such damages as are just, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin or husband and next of kin, as the case may be." 14 V.S.A. § 1492(b). In *Mobbs v. Central Vermont Ry.*, 150 Vt. 311, 315, 553 A.2d 1092, 1095 (1988), we held that because the term "next of kin" in the wrongful death act should carry the same meaning as it does in the laws of descent, brothers and sisters of a decedent can be next of kin entitled to recover damages under the act.

■ ¶ 7. We also recognized in *Mobbs* that "[t]he term 'pecuniary injuries' does not limit recovery to purely economic losses." 150 Vt. at 316, 553 A.2d at 1095. This holding is consistent with the modern trend toward construing wrongful death statutes to permit recovery of damages originally considered not to be pecuniary in nature. 1 S. Speiser, Recovery For Wrongful Death § 3:49, at 313 (2d ed. 1975). In reviewing the history of our wrongful death statute in *Clymer v. Webster*, 156 Vt. 614, 627, 596 A.2d 905, 913 (1991), we noted that, from early on, this Court has not construed the term "pecuniary injuries" in its strictest sense, which reflected "nineteenth-century social conditions when children were valued largely for their capacity to contribute to the family income."

■ ¶ 8. In holding "that the loss of the comfort and companionship of an adult child is a real, direct and personal loss that can be

measured in pecuniary terms," *id.* at 629, 596 A.2d at 914, we further noted that the modern trend was for courts to expand the scope of pecuniary losses to include loss of companionship, *id.* at 628, 596 A.2d at 913-14. "[T]he recent trend . . . unmistakably in favor of permitting" recovery for loss of companionship is founded on the theory that wrongdoers ought not to be allowed to take away the support, society, comfort and care which one enjoys, and yet escape liability beyond purely economic losses. 1 S. Speiser, *supra*, § 3:49, at 320-21; see also *Mears v. Colvin*, 171 Vt. 655, 657, 768 A.2d 1264, 1267 (2000) (mem.) (pecuniary injuries are not limited to economic losses, but may include recovery for loss of child or spouse's companionship, as well as loss of care, nurture, and protection).

¶ 9. In *Mobbs*, the plaintiff sought damages for the loss of a sibling's companionship. But because there was a complete lack of evidence to support such an award, we expressly declined to reach the issue of whether damages for loss of companionship under the wrongful death act are limited to the destruction of a parent-child relationship. 150 Vt. at 314 n.2, 553 A.2d at 1095 n.2. Courts in jurisdictions with similar wrongful-death statutes allowing recovery to next of kin, however, have generally held that brothers and sisters may obtain damages for loss of companionship. See, e.g., *In re Estate of Finley*, 601 N.E.2d 699, 702 (Ill. 1992) ("We hold that proven loss of a sibling's society is a pecuniary injury for which siblings may recover under the wrongful death statute."); *Schmall v. Vill. of Addison*, 525 N.E.2d 258, 265 (Ill. App. Ct. 1988) (because siblings were decedent's next of kin, and next of kin's loss of society is included within scope of wrongful death act, trial court erred in dismissing siblings' claim for loss of society); *Gangemi v. Nat'l Health Labs., Inc.*, 677 A.2d 1163, 1167 (N.J. Super. Ct. App. Div. 1996) (recovery for loss-of-companionship damages under wrongful death act is not limited to parent-child relationship, but may also include next-of-kin siblings); see also 2 S. Speiser, *supra*, § 10:18, at 156 (courts construing next-of-kin wrongful death statutes have "unanimously held or recognized that brothers and sisters of the decedent are 'next of kin' entitled, as members of the class, to share in damages under whatever conditions attach generally to the beneficial rights of that class").

¶ 10. In construing a wrongful death statute that, in relevant part, is identical to ours, the Appellate Court of Illinois for the Second District reasoned as follows:

> Under our society's concept of the family, we see no sufficient reason to differentiate between the deprivation of companionship, guidance, advice, love and affection suffered by brothers and sisters upon the death of a family member from that suffered by parents or children. As the *Sheahan* court noted, although claims for loss of companionship made by next of kin collaterally related may present more problems of pleading and proof than such claims advanced by lineal kindred, this is no reason to deny them. Decedent's siblings, having alleged pecuniary injury from loss of society, must be given the opportunity to prove their losses.

*Schmall*, 525 N.E.2d at 265 (internal citations omitted); see *Sheahan v. Ne. Ill. Reg'l Commuter R.R.*, 496 N.E.2d 1179, 1182 (Ill. App. Ct. 1986) (where statute allows next of kin fair and just compensation with reference to pecuniary injuries, brothers and sisters must be permitted opportunity to present claims for loss of companionship, even though such claims may present more problems of pleadings and proof).

¶ 11. We agree with this analysis. Here, it is undisputed that plaintiff is decedent's next of kin. As the Illinois Supreme Court stated in construing a nearly identical statute, "[n]owhere in the wrongful death statute is there a distinction between the types of damages recoverable based upon who the next of kin is." *Finley*, 601 N.E.2d at 702. Because this Court has held that damages for loss of companionship are available under § 1492(b), plaintiff may obtain such damages to the extent that he can prove them by submitting evidence of the physical, emotional, and psychological relationship between himself and the decedent. See *Clymer*, 156 Vt. at 630, 596 A.2d at 914. At trial, plaintiff presented evidence concerning his relationship with the decedent, and thus the trial court should have considered that evidence and determined what damage award, if any, is appropriate. See *id.* (listing factors, including living arrangement of parties, harmony of family relations, and commonality of interests and activities for determining damages for loss of companionship).

¶ 12. Defendant contends, however, that *Clymer* was wrongly decided, and that, in any event, we should not extend damages for loss of companionship beyond the destruction of the parent-child relationship. We decline the invitation to reconsider *Clymer* insofar as defendant presents no basis for overturning the decision, which is

consistent with the modern trend and the decisions of the majority of jurisdictions construing similar statutes.

¶ 13. We note that the Legislature amended the wrongful death statute in 1996, five years after *Clymer* was decided, and yet did not disturb our holding in that case, despite plainly being aware of our interpretation of the statute. Nor has there been any legislative response to the decision in the ten years since then. This at least suggests legislative acquiescence. See 2B N. Singer, Sutherland Stat Const § 49.10, at 76 (5th ed. 1992) ("A number of decisions have held that legislative inaction following a contemporaneous and practical interpretation is evidence that the legislature intends to adopt such an interpretation. . . . Where action upon a statute or practical and contemporaneous interpretation has been called to the legislature's attention, there is more reason to regard the failure of the legislature to change the interpretation as presumptive evidence of its correctness."); cf. *In re Estate of Woolley*, 96 Vt. 60, 64, 117 A. 370, 372 (1922) ("[W]here a statute that has been construed by the courts has been re-enacted in the same, or substantially the same, terms, the Legislature is presumed to have been familiar with its construction, and to have adopted it as a part of the law, unless it expressly provides for a different construction."). Given *Clymer* as established precedent, defendant fails to offer any principled basis to allow loss-of-companionship damages to parents and children, but not brothers and sisters, irrespective of the circumstances.

¶ 14. Without explicitly stating that it would overrule *Clymer*, the dissent's position essentially is that this Court is wrong today because *Clymer* was wrongly decided fifteen years ago. Relying on several nineteenth-century and early twentieth-century cases, particularly *Lazelle v. Town of Newfane*, 70 Vt. 440, 41 A. 511 (1898), the dissent states that damages for "pecuniary injuries" should be restricted to pure economic loss — even though our more recent case law has held otherwise. The dissent contends that the modern trend of allowing loss-of-companionship damages as pecuniary loss in wrongful death cases extends only to cases involving the death of a child, but then quotes extensively from a twenty-three-year-old Oklahoma case that acknowledges the "trend toward expanding 'pecuniary loss' to include loss of love and companionship and toward allowing recovery of these elements by *any member of a decedent's family unit.*" *Clark v. Jones*, 658 P.2d 1147, 1149 (Okla. 1983) (emphasis added).

¶ 15. The court in *Clark* declined to allow loss-of-companionship damages to siblings because Oklahoma's wrongful death statute had established a list detailing what types of damages were recoverable by whom, and the list specifically provided loss-of-companionship damages to certain types of next of kin that did not include siblings. *Id.* at 1148-49. The dissent would follow the same reasoning here. We decline to do so for two reasons — the Oklahoma statute is distinguishable from ours and this Court has already rejected the reasoning advocated by the dissent. The Oklahoma statute quoted in *Clark* was plainly meant to be a comprehensive list of the specific types of damages available to particular types of next of kin. In contrast, apart from the 1976 amendment specifically allowing loss-of-companionship damages for the death of a minor child, our statute generally refers to pecuniary injuries without elaboration as to the types of damages allowed. Moreover, following a lengthy analysis, we held in *Clymer*, 156 Vt. at 626, 596 A.2d at 912, that the 1976 amendment was not intended to restrict the scope of pecuniary injuries for other next of kin.

¶ 16. The dissent concedes that our decision today is consistent with *Clymer* and this Court's broadened view of pecuniary injury, but complains that *Clymer* amended rather than interpreted § 1492(b). According to the dissent, because *Clymer* is a less compelling precedent, we should not expand its reasoning to extend loss-of-companionship damages to siblings, even though there is no logical basis for drawing the line between types of next of kin. Apparently, the dissent would not overrule *Clymer*, but would limit its reach because it was wrongly decided. *Clymer* was decided fifteen years ago by a unanimous Court. Our holding, which has been left undisturbed by the Legislature, was based on an extensive historical and statutory analysis. Neither defendants nor the dissent has offered any rational basis for limiting the holding to adult children, and not siblings. Therefore, we reject such a limitation as imposed by the superior court.

¶ 17. Plaintiff further argues that the superior court erred by refusing to award out-of-pocket expenses, including funeral and burial expenses, incurred as the result of his brother's death. In support of its ruling, the superior court cited an 1898 case in which this Court refused to award burial expenses for the death of the plaintiff's child because the common law did not allow the death of a human being as grounds for a damages action. See *Trow v. Thomas*, 70 Vt. 580, 586-87, 41 A. 652, 654-55 (1898).

■ ¶ 18. In this case, however, plaintiff's suit was not brought under the common law, but rather under § 1492(b), which allows damages for pecuniary injuries resulting from the death of next of kin, and thus supersedes the common-law notion that recovery for damages ceases upon death. Although defendant may challenge the reasonableness of the expenses, we conclude that plaintiff's loss for funeral and burial expenses resulting from the death of his brother are compensable as pecuniary injuries under the wrongful death act, regardless of whether plaintiff was legally obligated to pay those expenses. See 1 S. Speiser, *supra*, § 3:58, at 358 ("[I]n a majority of states . . . funeral expenses are recoverable in a wrongful death action when the plaintiff has paid or has rendered himself legally liable to pay them."); see, e.g., *Brown v. Horn*, 578 N.Y.S.2d 951, 952 (App. Div. 1992) (where amount of recovery is measured by pecuniary injuries resulting from decedent's death to persons whose benefit action is brought, damages include funeral expenses); *Murray v. Templeton*, 576 S.W.2d 138, 139 (Tex. Ct. App. 1978) (funeral expenses may be recovered in wrongful death action "either by the statutory beneficiaries who paid the same or by the estate of the decedent").

■ ¶ 19. Our conclusion is based on "[t]he reasoning . . . that the funeral expenses are a direct result of the wrongful death and, as a matter of justice, should be considered an item of damages suffered by the person liable to pay them." 1 S. Speiser, *supra*, § 3:58, at 358-59. In contrast, the other out-of-pocket expenses claimed by plaintiff — certain debts arising from settlement of the estate, such as payment of insurance and property taxes — lack a direct causal connection to the tort and thus are not compensable. Those losses are the direct result of the decedent's financial situation at the time of his death, and not of the tort. Cf. *Quesnel v. Town of Middlebury*, 167 Vt. 252, 256, 706 A.2d 436, 438 (1997) (under wrongful death statute, "damages are based on the loss suffered by the spouse and the next of kin"). Accordingly, the matter is remanded for the superior court to assess plaintiff's reasonable funeral and burial expenses.

■ ¶ 20. Finally, we must address the superior court's statement at the end of its decision that even if pecuniary damages were found, there would be no basis to assign them to defendants because, due to the default judgment, plaintiff did not introduce evidence demonstrating that defendants committed the act that led to the damages. We cannot accept this reasoning.

¶ 21. In his complaint, plaintiff alleged that one or both of the defendants shot and killed his brother. It is undisputed that one of the defendants purchased the weapon used to kill plaintiff's brother shortly before his death, and that both defendants were at the decedent's residence when he died. Defendants avoided plaintiff's various attempts at deposing them and failed to defend against his suit. Accordingly, a default judgment on liability was entered against them. Thus, if plaintiff can prove pecuniary injuries resulting from the death of his brother, he is entitled to them by virtue of the default judgment.

¶ 22. The 1844 case that the superior court cites to support its view to the contrary does not stand for the proposition that a default judgment cannot support damages for pecuniary injuries in a wrongful death action. Rather, it holds merely that when a default judgment is entered against a defendant, "the defendant only admits *something* to be due," but the plaintiff must still prove to the jury the amount of damages. See *Webb v. Webb*, 16 Vt. 636, 639 (1844). Thus, the default judgment entitles plaintiff to reasonable damages supported by sufficient proof.

*Affirmed in part, reversed in part, and remanded for the superior court to award plaintiff damages for reasonable funeral and burial expenses and for the loss of his brother's companionship, if demonstrated by the evidence.*

¶ 23. **Burgess, D.J.,** Specially Assigned, dissenting in part. I respectfully dissent from the majority's extension of the wrongful death act to recovery for sibling loss of companionship. While the homicide at the core of this case was horrific, the trial court was nevertheless correct in holding that Vermont's wrongful death act creates no cause of action for grief, anguish and loss of companionship resulting from the wrongful killing of a brother or sister. The right to recover any damages for wrongful death is purely statutory. No such claim exists in common law. See, e.g., *Lazelle v. Town of Newfane*, 70 Vt. 440, 443, 41 A. 511, 512 (1898) (explaining that at common law, all actions for personal injuries died with the person injured, and recognizing that damages for the death of a person, caused by the wrongful act of another person, are recoverable only by force of the wrongful death statute). It is elemental, then, that damages for the death of a person, caused by the wrongful act of another, "are recoverable only by force of the statute." *Id.*

¶ 24. The statute provides that next of kin may recover:

such damages as are just, with reference to the pecuniary injuries resulting from such death . . . . In the case where the decedent is a minor child, the term pecuniary injuries shall also include the loss of love and companionship of the child and for the destruction of the parent-child relationship in such amount as under all the circumstances of the case, may be just.

14 V.S.A. § 1492(b). The second sentence, specifically including within the term "pecuniary injuries" a parent's claim for "loss of love and companionship" of a wrongfully-killed minor child was added by the Legislature in 1976. Prior to this amendment, it was long established that the Act "awards damages to the decedent's next of kin *only* for 'pecuniary loss.'" *Hartnett v. Union Mut. Fire Ins. Co.*, 153 Vt. 152, 153, 569 A.2d 486, 487 (1989) (emphasis added); see also *Lazelle*, 70 Vt. at 443-44, 41 A. at 512-13; *Needham v. Grand Trunk Ry.*, 38 Vt. 294, 305 (1865).

¶ 25. "Pecuniary loss" ordinarily means economic loss, commonly measured by the "reasonable expectation by the next of kin of deriving some pecuniary advantage or benefit from the continuance of the life of the deceased." *D'Angelo v. Rutland Ry. Light & Power Co.*, 100 Vt. 135, 136-37, 135 A. 598, 598 (1927); see also *Boyden v. Fitchburg R.R.*, 70 Vt. 125, 127, 39 A. 771, 771 (1897) (stating that "destruction of such expectation will sustain the action"); *Lazelle*, 70 Vt. at 444, 41 A. at 512 ("Pecuniary loss . . . to those who had a reasonable expectation of pecuniary benefit . . . is the foundation of this action.") (citation omitted). "Pecuniary loss" was also measured by the replacement cost of the intellectual, moral and physical training lost to a child as a result of the wrongful death of parent. *Hoadley v. Int'l Paper Co.*, 72 Vt. 79, 83, 47 A. 169, 171 (1899) (including damages for lost parental instruction as "pecuniary injuries," since such training "costs money to secure . . . for a child from those not its parents"); see also *Lazelle*, 70 Vt. at 445, 41 A. at 512 (recognizing as compensable the care and nurture lost to children resulting from the wrongful death of a parent, as well as care and protection lost to a widow as a result of the untimely death of a spouse).

¶ 26. Before this Court's reinterpretation of "pecuniary injuries" in *Clymer v. Webster*, 156 Vt. 614, 629, 596 A.2d 905, 914 (1991), to include damages for "loss of the comfort and companionship of an adult child," it had been settled for nearly a century, if not longer, that damages for those kind of intangible losses were not allowed

under the Act. "[I]n estimating the damages the jury [is] confined to the pecuniary loss sustained by the widow or next of kin, and cannot take into consideration their grief and mental suffering, nor give damages by way of *solatium* . . . ."[1] *Lazelle*, 70 Vt. at 443-44, 41 A. at 512. In *Lazelle*, the surviving son of an elderly mother killed as a result of an "insufficiency" in a town road appealed the trial court's refusal to instruct the jury that it might award damages in his wrongful death claim for loss of society of his deceased mother. *Id.* at 441, 41 A. at 511. This Court reiterated that wrongful death recovery under the statute was limited to pecuniary injury, *id.* at 443, 41 A. at 512, and that "[t]he son's loss of the society of his mother *was not an element of recovery* . . . ." *Id.* at 446, 41 A. at 513 (emphasis added). The holding of *Lazelle* was, and remains, consistent with the statutory language specifying recovery for "pecuniary injuries" only, except as otherwise provided for parents of deceased children by the 1976 amendment.

¶ 27. The majority reasons that because this Court found in *Clymer* that the statute enables parents of wrongfully killed children to claim damages for lost love and companionship, essentially without the amendment and regardless of the deceased child's age, the same recovery should also be available to adult siblings when they stand as the next of kin aggrieved over the same deprivation of their brother or sister. While consistent with the logic of *Clymer*, the majority's result is inconsistent with the plain language of the statute. The broadened construction of "pecuniary injuries" in *Clymer* supports the majority's conclusion, but *Clymer* appears to me more a case of statutory amendment than interpretation, and less-than-compelling precedent for extending this construction of the Act even further.

¶ 28. The holding of *Clymer* relies on two equally uncertain constructions. The first is dicta in *Mobbs v. Central Vermont Ry.*, 150 Vt. 311, 316, 553 A.2d 1092, 1095 (1988), that the statutory term "'pecuniary injuries' does not limit recovery to purely economic losses."[2]

---

[1] Derived from the Latin "solace," solatium means "compensation or damages, esp. for injury to the feelings." Webster's New World College Dictionary 1363 (4th ed. 2001).

[2] Finding no evidence in the record to support any claim for wrongful death recovery of damages claimed by a surviving brother for pecuniary injury and loss of companionship, the Court in *Mobbs* affirmed the directed verdict below, rejecting plaintiff's argument that damages should be presumed, but declaring, without need, that "[t]he term 'pecuniary injuries' does not limit recovery to purely economic losses." 150 Vt. at 316, 553 A.2d at 1095. Curiously, *Mobbs* expressly declined to reach the lost-compan-

The second is the substitution in *Clymer* of recovery for potentially unlimited claims for losses "that can be measured in pecuniary terms," 156 Vt. at 629, 596 A.2d at 914, in place of the statutory limitation on recovery to actual "pecuniary injuries."[3]

¶ 29. Both abolish the pecuniary limitation as enacted by the Legislature and repeatedly recognized by this Court. See, e.g., *Lazelle*, 70 Vt. at 443-44, 41 A. at 512; *Hoadley*, 72 Vt. at 83-84, 47 A. at 171; see also *Hartnett*, 153 Vt. at 153-54, 569 A.2d at 487 (confirming the limit on damages as "only for 'pecuniary loss,'" and observing that "[i]n modern times, the loss to parents and other next of kin from the death of a child is more likely to be nonpecuniary — for example, mental anguish and loss of companionship — than pecuniary.").[4] This construction, however compassionate, was a substantial departure from precedent and a substantial change to the right of recovery supposedly governed by the wrongful death act. The majority rewrites the statute again to allow recovery for anguish and suffering for lost siblings.

¶ 30. More liberalized recovery for wrongful death may be laudable public policy, but where a statute already exists, it is an expansion most properly left to the Legislature that created the cause of action in the first place. The extent of wrongful death recovery under the Act is a matter of legislative concern, and not for common law

---

ionship issue, *id.* at 314 n.2, 553 A.2d at 1095 n.2, suggesting that the matter was open to question as if the Court had not flatly rejected such a claim in *Lazelle*.

[3] *Clymer* cites recognition of wrongful death recovery for lost nurture, training, care and protection in *Lazelle*, and recovery for lost support anticipated after a decedent's minority allowed in *D'Angelo*, 100 Vt. at 137-38, 135 A. at 598-99, as examples of "case law concerning the nature and extent of pecuniary loss . . . in a state of gradual intermittent development," *Clymer*, 156 Vt. at 626, 596 A.2d at 912, but a close reading of those cases confirms that damages for pecuniary injuries were always in the conventional context of replacement cost for tangible losses, *D'Angelo*, 100 Vt. at 139-40, 135 A. at 598-99, while intangible losses were disallowed, *Lazelle*, 70 Vt. at 443-44, 446, 41 A. at 512-13.

[4] This comment was disclaimed in *Clymer* as dicta unnecessary to the holding in *Hartnett* that damages for a parent's grief, mental anguish and suffering over the wrongful death of a child were encompassed in the terms of the 1976 amendment ostensibly authorizing parental recovery for "loss of love and companionship . . . and . . . destruction of the parent-child relationship." See *Clymer*, 156 Vt. at 629 n.8, 596 A.2d at 914 n.8. Nevertheless, the brief history of Vermont's wrongful death act set forth in *Hartnett*, 153 Vt. at 154, 569 A.2d at 487, and its characterization of the "pecuniary loss rule" are entirely supported by the statute and case law. See, e.g., *Lazelle*, 70 Vt. at 443-44, 446, 41 A. at 512-13.

development. My reservation is not with the policy choice, but that the Legislature, rather than the Court, is the proper forum for rewriting the statute. Acknowledging *Clymer* as a matter of stare decisis does not require us to further revise the statute to include what the Legislature did not apparently intend upon enactment.

¶ 31. The majority here cites *Clymer* as recognizing the "modern trend" of expanding pecuniary losses to include damages for loss of companionship, *ante*, ¶ 8, but this trend was limited to a parent's recovery of damages for the loss of companionship of a child. See 156 Vt. at 628, 596 A.2d at 913 ("In recent years, a clear majority of jurisdictions with statutes limiting wrongful death recovery to pecuniary loss have expanded the scope of such loss to encompass loss of companionship of a child."). Indeed, all of the cases cited in *Clymer* to support this proposition involve parent-child relationships. See *id.* at 628, 596 A.2d at 913-14; see also *In re Air Crash Disaster Near Chicago, Ill.*, 771 F.2d 338, 340 (7th Cir. 1985) (recognizing general trend among state courts to allow parents to recover for the loss of a child's society but finding no similar trend among states to allow adults to recover for the loss of an adult sibling's society).

¶ 32. Neither the statute, nor *Clymer*, establishes that damages for loss of companionship are available to all beneficiaries under the Act. The Oklahoma Supreme Court faced a similar situation in *Clark v. Jones*, 658 P.2d 1147, 1149 (Okla. 1983), where that court rejected a claim that siblings of a minor decedent could recover damages for loss of love, affection, and companionship under Oklahoma's wrongful death statute. See also *Hartnett*, 153 Vt. at 154, 569 A.2d at 487 (stating that Oklahoma adopted same statutory language as that found in Vermont's 1976 amendment to wrongful death statute, and recognizing that "[w]here Vermont adopts a statute copied from another state, the presumption is that the Legislature also adopted the construction given the statute by the courts of the other state"). But see Okla. Stat. title 12, § 1055 (2005) (identifying damages recoverable in wrongful death action when decedent is an unmarried, unemancipated, minor child, which includes some elements not present in 14 V.S.A. § 1492(b)).

¶ 33. Like Vermont, the Oklahoma wrongful death statute initially allowed recovery for "pecuniary loss" and was silent as to the elements of recoverable damages. *Clark*, 658 P.2d at 1148. An amendment in 1975 gave parents the right to recover damages for, among other things, the "loss of companionship and love of the child" and the "destruction of the parent-child relationship." *Id.* at 1148-49.

As the Oklahoma court found, the amendment "marked a significant departure from the purely pecuniary value approach for measuring a parent's legal loss," and it introduced new elements of recoverable damages not previously allowed to be considered in an action for the death of a minor. *Id.*

¶ 34. The court found that "[b]y expanding the parameters of recoverable loss in a single litigation category — that for the death of unemancipated minor children — the legislature doubtless intended to limit to the surviving parents the ambit of the beneficiary class to be affected by its enactment." *Id.* at 1149. The court concluded that, when all of the elements of recoverable damages that were recognized by the statutory amendment were viewed together, it was manifest that the recovery thereunder clearly was intended to benefit the class of surviving parents only. *Id.*

¶ 35. We should reach a similar conclusion here. The plain language of § 1492(b) indicates that the Legislature intended to limit loss-of-companionship damages to the parents of deceased children. As Justice Peck observed in *Hartnett*:

> [I]t is not "a legitimate function of this Court to expand a statute by implication, that is, by reading into it something which is not there, unless it is *necessary* in order to make it effective. To do so would usurp the exclusive prerogative of the Legislature; it would constitute judicial legislation, and violate the border lines drawn by the constitutional doctrine of separation of powers."

153 Vt. at 164, 569 A.2d at 490 (Peck, J., dissenting) (quoting *State v. Jacobs*, 144 Vt. 70, 75, 472 A.2d 1247, 1250 (1984) (additional citations omitted)).

¶ 36. The additional arguments raised by the majority in support of its interpretation of § 1492(b) are unpersuasive. The Legislature's post-*Clymer* amendments to the wrongful death act concerned a different subsection of the statute. Absent indication that a court ruling comes particularly to the Legislature's attention and is then left alone, lack of legislative action is hardly a reliable indicia of acquiescence. "Legislative inaction has been called a weak reed upon which to lean and a poor beacon to follow in construing a statute." 2B N. Singer, Sutherland Stat Constr § 49.10, at 76 (5th ed. 1992) (quotations and citations omitted); see also *Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n.1 (1989) ("It is impossible to assert with any degree of assurance that congressional failure to act

represents affirmative congressional approval" of judicial interpretation of a statute.) (internal quotation and citation omitted).

¶ 37. The cases from other jurisdictions on which the majority relies for a "general trend" are equally unpersuasive. This Court should not look for trends, rather than legislative intent, when interpreting a statute in place since 1849, especially when the trend appears to be at odds with the Legislature's plain language. In rejecting a similar argument, the Oklahoma Supreme Court explained:

> We cannot follow evolving case law from other jurisdictions in which there is a trend toward expanding "pecuniary loss" to include loss of love and companionship and toward allowing recovery of these elements by any member of a decedent's family unit. These out-of-state decisions rest largely on statutory schemes dissimilar to, and quite incompatible with, our present legislative design for the apportionment of loss categories among the authorized survivor-beneficiary classes. At this stage of our law's development, judicial expansion of the pecuniary loss concept would run afoul of explicit limitations imposed by legislative will in [the wrongful death statute].

*Clark*, 658 P.2d at 1149 (internal citation and emphasis omitted); see also *Hartnett*, 153 Vt. at 156, 569 A.2d at 488 ("The actions of other states with different statutes are irrelevant to the proper construction of our statute.").

¶ 38. The majority's reliance on *In re Estate of Finley*, 601 N.E.2d 699 (Ill. 1992), is misplaced. In *Finley*, the Illinois Supreme Court held that the "proven loss of a sibling's society is a pecuniary injury for which siblings may recover under the wrongful death statute." *Id.* at 702. The Illinois court recognized, however, that "[n]owhere in the [Illinois] wrongful death statute is there a distinction between the types of damages recoverable based upon who the next of kin is." *Id.* Our statute, in contrast, does draw such a distinction. As discussed above, the Legislature specifically allowed parents to recover loss-of-companionship damages when the decedent is a child; it did not provide a similar right of recovery for siblings.

¶ 39. I am authorized to state that Chief Justice Reiber joins in this dissent.