Nautilus Ins. Co. v. Loomis, No. 194-9-10 Oecv (Eaton, J., Feb. 29, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Orange Unit | Docket No. 194-9-10 Oecv |

| | |
|---|---|
| Nautilus Insurance Company<br>  Plaintiff<br><br>  v.<br><br>Jason Loomis<br>  Defendant<br><br>  v.<br><br>The Clerkin Agency<br>  Third Party Defendant | |

DECISION ON MOTION TO DISMISS

The Clerkin Agency, as third party defendant, has filed a motion to dismiss the claims asserted against it by defendant, Jason Loomis, alleging that his third party complaint does not state a cause of action against it. Mr. Loomis has opposed the motion.

Factual Background

Plaintiff Nautilus Insurance Co. brought this action against Loomis for unpaid premiums which it claims are due to them as a result of an audit conducted in connection with a commercial liability policy issued by Nautilus to Loomis. Proceeding pro se, Loomis has asserted a third party claim against the Clerkin Agency, his insurance agent who procured the commercial liability policy. Mr. Loomis alleges various acts by Clerkin violated the Insurance Trade Practices Act, 8 V.S.A. § § 4721 et seq., and also Vermont's Consumer Fraud Act, 9 V.S.A. § § 2451 et seq. The Clerkin Agency asserts that neither statute provides defendant with a cause of action.

Discussion

Motions to dismiss are not favored, and are rarely granted. *Gilman v. Maine Mutual Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554 (mem.). The purpose of a motion to dismiss is to test the law of the case, not the facts which underlie the complaint. *Kane v. Lamothe*, 2007 VT 91, ¶ 14, 182 Vt. 241. In considering a motion to dismiss, the court assumes all factual allegations in the complaint to be true and gives the benefit of all reasonable inferences to the non-moving party. *Richards v. Town of Norwich*, 169 Vt. 44, 48 (1999). A motion to dismiss should not be granted unless it is beyond doubt that there exist no facts or circumstances which would entitle

the plaintiff to relief. *Assoc. of Haystack Property Owners, Inc. v. Sprague*, 145 Vt. 443, 446–47 (1985).

Claims under the Insurance Trade Practices Act

Defendant asserts that Clerkin violated the Insurance Trade Practices Act (ITPA), 8 V.S.A. § 4721 et seq. Defendant further asserts that because a private right of action exists against insurance finance companies under 8 V.S.A. § 7009, a private right of action should exist under 8 V.S.A. § 4721 et seq. as well.

It is not alleged that the Clerkin Agency is an insurance financing company. As a result, 8 V.S.A. § 7009 does not apply in this instance. Defendant's assertion that a private cause of action should exist under the ITPA, as it does against insurance finance companies, is inconsistent with well established Vermont law.

In 1981, the Vermont Supreme Court held that no private cause of action existed under the ITPA. *Wilder v. Aetna Life & Casualty Insurance Co.*, 140 Vt. 16 (1981). The ITPA is a regulatory statute that provides public administrative sanctions against unfair and deceptive acts within the insurance industry, but it does not create a private cause of action or imply a duty toward any one person. *Wilder* has been consistently followed in the 30 years since it was decided. *Denis Bail Bonds v. State of Vermont*, 159 Vt. 481 (1993); *Larocque v. State Farm Insurance*, 163 Vt. 617 (1995); *City of Burlington v. Hartford Steam Boiler Inspection and Insurance Co.*, 190 F. Supp 2d. 663 (D. Vt. 2002).

There is no private cause of action for claimed violations of the ITPA.

Claims under the Consumer Fraud Act

Defendant's claims under the Consumer Fraud Act (CFA), 9 V.S.A. § 2451 were also addressed in *Wilder*. The *Wilder* Court held that the CFA did not apply to insurance since the provision of insurance is neither a good nor a service.

Four years after *Wilder*, the CFA was amended with respect to the definition of goods and services. The combined definition of goods and services contained in 9 V.S.A. § 2451a (b) now reads as follows:

> (b) "Goods" or "services" shall include any objects, wares, goods, commodities, work, labor, intangibles, courses of instruction or training, securities, bonds, debentures, stocks, real estate, or other property or services of any kind. The term also includes bottled liquified petroleum (LP or propane) gas.

Defendant asserts that the amended definition in the CFA covers the provision of insurance because the new language includes "intangibles" and "property or services of any kind." Defendant has provided the court with the amicus brief of the Vermont Attorney General in the matter of *Greene v. Stevens Gas Service*, 2004 VT 67, 177 Vt. 90, a case which squarely

2

presented the question of whether the amended definition of "goods" and "services" applied to insurance. In *Greene*, however, the Vermont Supreme Court declined to decide the issue, determining instead that the facts of the case did not establish CFA liability even if such liability existed. Defendant has also provided a Vermont Bar Journal article discussing the applicability of the CFA to the provision of insurance, and both parties have submitted portions of legislative history in support of their positions.

Although there has been lengthy discussion of the issue of the applicability of the CFA to insurance contracts, as exemplified by the Bar Journal article and the briefs submitted in *Greene*, the Supreme Court has not re-examined the issue in any detail. On several recent occasions the federal district court judges have struggled with the question and noted that it is an open question whether the amended definition was meant to "extend[] the CFA to insurance." *Sullivan v. Allstate Insurance Co.* 2010 WL 3323726 (D. Vt. Aug. 3, 2010); *R.L. Vallee, Inc. v. American Specialty Lines Insurance Co.*, 431 F.Supp.2d 428, 442 (D.Vt. 2006).

In reviewing the issue here, the parties have provided excerpts from the legislative history, as researched by the Attorney General and the parties to the *Greene* case. Although the excerpts include commentary from legislators pertaining to the scope of the amended definition, there is no mention in the record at all of the topics of insurance or *Wilder*. Instead, it appears that the legislature was primarily concerned at the time with extending the protections of the consumer-fraud statutes to farmers. It further appears that the actual amendment was included as part of an act relating to the regulation of companies which furnish bottled gas. 1985, No. 34, § 1. Given the amount of research that has been devoted to the legislative record on this issue, this court finds the absence of any reference to insurance or *Wilder* to be significant.

It is possible to read the statutory language as supporting either position when the amended definition is considered in the context of its enactment. At the time of the 1985 amendment, some states had held the provision of insurance to be a "good" or "service" under their consumer-fraud statutes, but other states had expressly held that insurance did not fall within that definition. See generally Annotation, *Coverage of insurance transactions under state consumer protection statutes*, 77 A.L.R.4th 991 (1989 & Cum. Supp. 2011) (collecting cases). In Vermont, of course, the legislature was not painting upon a blank canvas because the Supreme Court had held just four years earlier in *Wilder* that insurance was neither a "good" nor a "service." If the legislature had wished to abrogate that holding and include the provision of insurance as a good or service, it would have been a simple matter to so indicate by including the term "insurance" within the definition of a "good" or "service." Instead, the legislature did not mention insurance at all, but rather chose to amend the definition to include the terms "intangibles" and "property or services of any kind" within the definition of "goods" and "services," without any indication that it was doing so with *Wilder* or insurance in mind.

It would be reasonable to include insurance within the definition of an intangible or otherwise as a property interest of some kind. See *Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 57 (Colo. 2001) (describing insurance as "intangible property"). It would also be reasonable to point out that (1) the CFA is a remedial statute that should construed liberally so as to protect the public from deceptive acts in commerce, and (2) there is a canon of statutory construction that holds that the legislative intent is best reflected in the plain meaning

3

of the statutory language. *Elkins v. Microsoft Corp.*, 174 Vt. 328, 330–31 (2002). From these premises, one might well conclude that, by amending the definition of "goods" and "services" to include "intangibles," the legislature must have meant to include the provision of insurance within the scope of the CFA.

On the other hand, trial courts are instructed to consider not only the language of the statute and the purposes of the legislation, but also "the legislative history and the circumstances surrounding [the] enactment" of a statute when seeking to determine the legislative intent. *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶ 12 (quoting *Perry v. Med. Practice Bd.*, 169 Vt. 399, 406 (1999)). In this case, as noted above, there is the issue that neither the legislative history nor the circumstances surrounding the amendment of the definition support the conclusion that the legislature intended to abrogate *Wilder* and extend consumer-fraud liability to the insurance industry. Adding to this is the canon of statutory interpretation that cautions the legislature to be more explicit about its intent if it truly means to disapprove a recent judicial interpretation of a statute. See, e.g., *Dubaniewicz v. Houman*, 2006 VT 99, ¶ 13, 180 Vt. 367.

It is also important to keep in mind that the extension of consumer-fraud liability to the insurance industry is an issue of significant statewide economic consequence upon which numerous parties have established settled expectations based on the existing state of the law. It would not be desirable for one trial court in one part of the state to upset those expectations by proclaiming that a decided opinion of the Vermont Supreme Court is no longer good law without some clear indication from the Supreme Court or the legislature to that effect.

In the final analysis, therefore, there are good arguments why insurance *could* be included within the amended definition of "goods" and "services," but there are not any indications that the legislature actually intended to include insurance within the scope of consumer-fraud liability when it amended the statute. In the absence of a more specific expression of legislative intent to abrogate *Wilder*, and in the absence of any post-amendment suggestion by the Supreme Court to that effect, this court considers the decision in *Wilder* to remain controlling precedent. Accordingly, the provision of insurance, as was done by Clerkin, is not a "good or service" and therefore is not within the provisions of the CFA.

Based upon the foregoing, The Clerkin Agency's Motion to Dismiss is **GRANTED**.

Dated at Chelsea this 29th day of February, 2012.

_____
Harold E. Eaton, Jr.
Superior Court Judge

4